39861. HARPER v. THE STATE.

MARSHALL, Presiding Justice.

The appellant, Richard James Harper, was convicted of the murder of Larry Green, and he was sentenced to life imprisonment. This is his appeal. The evidence showed the following:

Rocky Foster testified that on the day of August 17, 1981, he, Harper, Green, and others had been together. At approximately 10:30 p.m., Green left for work at Overnite Transportation Co., where he

was employed by Wackenhut Security Co. as a security guard. Foster testified that the appellant was angry at Green, because the appellant's sawed-off shotgun was in Green's car. The appellant and Foster drove in the appellant's silver Granada to Green's place of employment so that the appellant could retrieve his shotgun.

William Dillard, co-worker of Green's, testified that on the night of August 17 he observed two black men exit a silver Granada and enter the guardhouse where Green worked. The car left sometime after 2:30 a.m. Shortly thereafter, Green was found shot to death. His blue Wackenhut uniform jacket and blue Wackenhut cap with a winged emblem were gone. The police later recovered a blue Wackenhut hat from the living room of the appellant's parents' home; and a blue Wackenhut uniform jacket was recovered from the appellant's silver Granada, which was parked at the appellant's parents' home.

The appellant told the police that it was Foster who had shot Green at the guardhouse, and that Foster had attempted to steal several items from appellant's parents' home. The appellant further told the police that, as a result of this, he and Foster had struggled with a gun, which discharged and hit Foster. At approximately 5:25 a.m. on August 18, the appellant did make a police report that his parents' home had been burglarized. At 8:45 a.m., the appellant again reported that his parents' home, as well as his father's Thunderbird automobile, had been broken into. A Hess service station shirt was recovered by the police from the Thunderbird. The appellant disclaimed any knowledge of the shirt.

This led the police to the robbery of a Hess service station located approximately two miles from the appellant's house. The robbery occurred at approximately 3:30 a.m. on August 18. The attendant at this service station, John Munday, testified that the appellant and another black man had driven up to the station in a silver Granada; the appellant pulled a gun and ordered Munday into the bathroom; the appellant took Munday's wallet, and told him that the Wackenhut hat he was wearing belonged to a security guard whom he had just killed; the appellant then shot Munday in the head, blinding him in the left eye.

Foster further testified that he went to sleep in the back of the appellant's car after they had left Green's place of employment; when he awoke, the appellant was driving the car, laughing, wearing Green's guard hat, and carrying his gun; the appellant drove to the Hess station, and Foster remained in the car; Foster heard a gunshot from inside the station; the appellant jumped in the car, smiled, and stated that he had just killed the attendant. Foster further testified that he accompanied the appellant to the appellant's parents' home;

the appellant then instructed him to touch everything in the home, and he threatened to kill Foster; he then snapped his gun in Foster's face, but it did not fire; Foster ran, and the appellant fired the gun, hitting Foster in the back. There was testimony at trial that the bullets recovered from Green and Foster were both .38 caliber bullets fired from the same gun.

In this appeal, the appellant advances six enumerations of error.

1. First, he argues that the trial judge erred in admitting in evidence the Wackenhut hat and jacket without a proper foundation being laid. We disagree.

At trial, an investigating police officer identified the hat and jacket as the ones seized from the appellant's parents' home. The appellant complains that there was no identifying characteristic to distinguish this hat and jacket from other Wackenhut Security uniform hats and jackets. Therefore, the appellant argues that it was incumbent upon the prosecution to establish a continuous chain of custody in order to render the hat and jacket admissible in evidence.

In order to render admissible testimony concerning expert analysis of an essentially fungible item such as a blood sample or a drug, the prosecution must have various persons who had custody of the item testify to their receipt and retention of the substance until delivery to some other person. Ga. Crim. Trial Prac., § 20-44 (1977). This is referred to as the chain-of-custody requirement, and its purpose is, of course, to ensure that the drug or blood sample is in fact that taken from the accused.

However, as to items of evidence which are distinct and recognizable physical objects, such that they can be identified by the sense of observation, the rule is that such items are admissible in evidence without the necessity for showing a chain of custody. E.g., *Hurt v. State,* 239 Ga. 665 (7) (238 SE2d 542) (1977) (bedspread); *Ramey v. State,* 238 Ga. 111 (4) (230 SE2d 891) (1976) (rifle). In addition, "[w]here there is evidence that the perpetrator of a robbery wore certain clothing and carried a pistol, similar items belonging to or found in the possession of the defendant are properly admitted for the jury to consider. [Cits.]" *Jung v. State,* 237 Ga. 73, 74 (226 SE2d 599) (1976); *Paxton v. State,* 160 Ga. App. 19 (6) (285 SE2d 741) (1981). Thus, it really makes no material difference whether the hat and jacket were the identical ones worn by the appellant; the identification of the hat and jacket was sufficient to authorize the jury in deciding whether or not these were the items of clothing worn by the appellant. *Jung v. State,* supra; accord *Hill v. State,* 211 Ga. 683 (2) (88 SE2d 145) (1955).

2. Second, the appellant argues that the trial judge erred in admitting testimony from John Munday, the Hess station attendant,

identifying the appellant as the perpetrator of that robbery, in that his in-court identification was tainted by an impermissibly suggestive photographic line-up shown him earlier by the police.

A photographic array was presented to John Munday on the evening of August 18, while he was in the hospital. The photographic array consisted of six photographs of black men, numbered 1A through 6A. Munday stated that he was having difficulty making an identification, because the perpetrator had worn a hat pulled down over his face; however, Munday did state that the appellant's picture looked somewhat like the perpetrator. Munday was then given a photograph of the appellant showing his shoulders and upper chest. Upon being shown this photograph, Munday became upset, started crying, and stated that it looked like the person who shot him.

At trial, Munday testified that the appellant was the perpetrator of the robbery, on the basis of his personal observation of him during the robbery and not the photographic array.

The appellant attacks Munday's in-court identification of him on the ground that the photographic array was impermissibly suggestive in that (1) all but the appellant's photograph and one other photograph in the array were noticeably green in color; (2) Munday was told by police, prior to being shown the photographic array, that they had a suspect in custody; and (3) Munday, whose vision was impaired and who was emotionally distraught, was then shown a clearer, fuller photograph of the appellant.

The police officer conducting the photographic array testified that all of the pictures had "somewhat of a green tint, some more than others." Appellant's picture (No. 4A) was greener than No. 5A, but less green than No. 6A. He also testified that, at the time the photographic array was shown Munday, he feared Munday might not survive his injuries.

Munday testified that when the appellant came to the gas station, he parked his car in a well-lighted area. He instructed Munday to go into the bathroom and told him to pull down his pants, sit on the toilet, and take off his shirt. Munday testified that, "I didn't want to do anything to get him mad so I was watching him while he was talking, and he started talking about the hat he was wearing, and said it was the hat of a security guard that he had just killed, and then he asked me if I knew I was going to die . . . He talked for a little bit more, and he asked me if I was getting a good look at him and told me to quit looking at him, so I put my head down and after that, next thing I knew, I was on the floor. I had been shot."

In addition, the appellant's Granada was identified by Munday as the vehicle at the scene of the crime. Also, Munday's shirt, wallet, and driver's license were recovered from the appellant's father's

automobile.

We hold that under the totality of the circumstances here, the photographic array was not impermissibly suggestive, see Stovall v. Denno, 388 U. S. 293 (87 SC 1967, 18 LE2d 1199) (1967); *Mitchell v. State,* 236 Ga. 251 (2) (223 SE2d 650) (1976), and that the in-court identification of the appellant was reliable. See Manson v. Brathwaite, 432 U. S. 98 (97 SC 2243, 53 LE2d 140) (1977) and cits.; *Burrell v. State,* 239 Ga. 792 (239 SE2d 11) (1977).

3. Third, the appellant argues that the trial judge erred in allowing the prosecuting attorney to elicit testimony from Rocky Foster, who was also indicted for the murder of Larry Green, that no promise had been made to him in exchange for his testimony.

It is true that evidence of the good reputation of a witness for truth and veracity is inadmissible for the purpose of bolstering his testimony, unless he has been impeached or his character assailed. *Hornsby v. State,* 139 Ga. App. 254 (3) (228 SE2d 152) (1976) and cits. However, we hold that the eliciting of the complained-of testimony does not come within the prohibition of the foregoing rule, but rather constitutes a permissible method of laying the foundation for the prosecuting witness' testimony concerning the crimes charged. As stated in United States v. Craig, 573 F2d 513, 519 (7th Cir. 1978), "we believe that the jury's function of assessing credibility and weighing testimony is aided by [such] evidence . . . Indeed, such questions by the prosecution frequently provide a convenient opening for more exploration of a fertile area on cross examination."

4. Fourth, the appellant argues that the trial judge erred in failing to charge the law of voluntary manslaughter. We disagree.

There was no evidence of "serious provocation" resulting in "sudden, violent, and irresistible passion" so as to raise the offense of voluntary manslaughter under OCGA § 16-5-2 (a) (Code Ann. § 26-1102). *Comer v. State,* 247 Ga. 167 (275 SE2d 309) (1981).

5. Fifth, the appellant complains of a portion of the trial judge's charge in which it was stated to the jury that they would be authorized to find the appellant guilty of murder if they found beyond a reasonable doubt that he killed Larry Green by shooting him with a handgun.

However, in other portions of the charge, the trial judge repeatedly instructed the jury on the definition of malice aforethought, that it is an element of the crime of murder, and that the burden was on the state to prove it beyond a reasonable doubt. Under these circumstances, the portion of the charge complained of by the appellant could not have misled or confused the jury and does not, therefore, constitute reversible error. See, e.g., *Gober v. State,* 247 Ga. 652 (3) (278 SE2d 386) (1981); *Holt v. State,* 247 Ga. 648 (3)

(278 SE2d 390) (1981).

6. Lastly, the appellant argues that the evidence is insufficient to support the verdict of guilty of the offense of murder. We disagree.

The evidence shows that the appellant took a perverse and sadistic pleasure in the killing of other human beings, and it was clearly sufficient under Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to authorize a rational trier of fact in finding the appellant guilty beyond a reasonable doubt.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 1983.

*Virginia W. Tinkler,* for appellant.

*Robert E. Wilson, District Attorney, Robert E. Statham III, Assistant District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.