## S98A1788. HARTRY v. THE STATE.
(512 SE2d 251)

SEARS, Justice.

Rodriguez Fayon Hartry appeals his conviction and life sentence for the malice murder of Delma Goddard, Jr.[1] Hartry urges that his conviction must be reversed because after the trial court delayed ruling on his pre-trial motion to suppress mention of gang-related activity, the prosecution, in its opening statement, told the jury the evidence would show that the murder was gang-related, and then failed to offer any evidence of gang activity in the presentation of the State's case. We conclude that the prosecution's failure to offer evidence of gang-related activity, as detailed in its opening statement, warranted the granting of Hartry's subsequent motion for mistrial, and that the trial court abused its discretion in ruling otherwise. However, in light of the overwhelming evidence against Hartry, which included eyewitness testimony from no fewer than eight witnesses to the crime, we conclude that any attendant error was harmless. Finding no merit to Hartry's other contentions, we affirm.

The evidence of record shows that in the evening hours of May 26, 1996, Hartry, along with Rondell Durden and Darian Alexander,[2] drove to a "Stop the Violence" rally being held at Bonner Park in Milledgeville, Georgia. The three young men traveled in Alexander's pickup truck, with Alexander driving. An argument ensued between the trio and the occupants of a brown van. When police officers approached, the two vehicles drove off in different directions.

Later that same evening, Hartry and the other two, along with Raheen Vasser and David and Danny Renfroe, gathered at an apartment. According to Danny Renfroe and Vasser, Hartry had a nine millimeter handgun with him, and ridiculed the others for their reluctance to retaliate against the occupants of the brown van. According to David Renfroe, Hartry and Durden urged the others to drive to Fifth Street in Milledgeville, because, as Hartry stated, "they're having a party down there." The group first drove to the Renfroes' home, where David Renfroe retrieved Vasser's shotgun and

---

[1] The murder was committed on May 26, 1996. Hartry was indicted on May 29, 1996 and was convicted on September 27, 1996. On October 7, 1996, the trial court sentenced Hartry to life imprisonment for malice murder. Hartry filed a motion for new trial on October 17, 1996, and the motion was amended on September 12, 1997. The court reporter certified the transcript on January 6, 1997, and the trial court denied Hartry's new trial motion on March 6, 1998. On May 12, 1998, the trial court granted Hartry's request for an out-of-time appeal, and Hartry's notice of appeal was filed on May 21, 1998. The appeal was docketed in this Court on August 6, 1998. Hartry's untimely request for oral argument was denied on September 11, 1998, pursuant to Supreme Court Rule 50 (3), and the matter was submitted for decision without oral argument.

[2] Alexander's conviction for his involvement in the murder of Delma Goddard was reversed by this Court in *Alexander v. State*, 270 Ga. 346 (509 SE2d 56) (1998).

gave it to him. With the Renfroes remaining behind, the four others drove to Fifth Street. Hartry, armed with his nine millimeter handgun, and Vasser, armed with his shotgun, rode in the open back of Alexander's pickup truck. Durden rode in the passenger seat, and Alexander drove.

The quartet drove down Fifth Street, and turned around when the street dead ended. As they drove up the street, the headlights on Alexander's truck turned off, and Vasser fired his shotgun in the air while Hartry fired his nine millimeter pistol at the Fifth Street home of Doris Brown, who was at that time on her front porch with her friends and family. One of the bullets fired at Ms. Brown's home hit and killed her son-in-law, Delma Goddard. Six eyewitnesses and two of Hartry's co-defendants testified that the only shots fired at the home came from the back of Alexander's truck, where Hartry and Vasser were seated. Six of these eight eyewitnesses testified that two men were seated in the back of the truck, and that one man fired a shotgun and the other man fired a pistol. Two of these eyewitnesses identified Hartry as the man who fired the pistol at the people gathered on Ms. Brown's front porch. Three of these eyewitnesses identified Vasser as the man who fired a shotgun into the air, while the other man in the truck fired directly at the porch.

A neighbor of Ms. Brown spotted and later identified Hartry as he and the others fled the scene. After fleeing to Vasser's nearby trailer, Hartry removed his striped shirt, and left it in the trailer. He then telephoned his sister and arranged an alibi with her, and telephoned a friend who agreed to drive him home. He was arrested two days later.

Police recovered both Hartry's nine millimeter gun and Vasser's shotgun from a nearby creek. Two nine millimeter shell casings were recovered from the bed of Alexander's pickup truck. One nine millimeter bullet was recovered from Ms. Brown's attic. All were identified as having been fired from Hartry's handgun.

1. The evidence introduced at trial was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Hartry is guilty of malice murder.[3]

2. Hartry contends that his conviction must be reversed because after the trial court delayed ruling on his motion to suppress statements regarding alleged gang activity, the prosecutor made an opening statement in which he stated that he believed the evidence would show that the shooting of Delma Goddard was gang-related. Thereafter, during the trial, the prosecutor failed to offer any evidence to support that assertion. Hartry claims this improperly placed his

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

character in issue, and unfairly prejudiced his right to a fair trial.

Before trial began, Hartry moved the court to prohibit the State from referencing gang activity during the trial. The trial court denied the motion, based upon the State's representation that it would introduce evidence that the motive for the crime was gang-related. As stated in *Alexander*, supra, the trial court properly denied Hartry's motion, based upon the prosecution's representation, and the court correctly admonished the prosecution that evidence of gang membership and/or activity would need to be relevant in some way, and that the prosecution must be prepared to explain such relevancy and why any such evidence it sought to introduce was admissible.[4]

Over objection, the prosecution then stated during opening arguments that it expected the evidence to show that Hartry and his cohorts were members of the Folks gang; that they argued at the rally with members of the Blood gang who were traveling in the brown van; that Fifth Street in Milledgeville is in Blood gang territory; and that Hartry and the others committed a drive-by shooting on Fifth Street in order to retaliate against the Blood gang.

During trial, however, the prosecution did not attempt to identify the occupants of the brown van with whom Hartry and the others argued. Moreover, even though a State's witness claimed to know the identity of the driver of the brown van, the prosecution did not call that individual as a witness in order to determine whether he and the others in the van were members of a gang. Nor did the State attempt to introduce evidence that Fifth Street was in the territory of any specific gang. Furthermore, the prosecutor never sought to identify Hartry as the member of a gang, although he did establish that Vasser, who was not at the rally, did belong to a gang. Accordingly, as we found in *Alexander*, the record shows that the State failed to offer the evidence of significant gang activity that it detailed in its opening statement.[5]

As thoroughly explained in *Alexander*, a prosecutor's opening statement must be confined to what he or she expects the evidence to prove at trial.[6] If a prosecutor fails to follow that requirement, a conviction will not be reversed if the opening statement was made in good faith, and the trial court instructs the jury that opening statements are not to be considered as evidence during deliberations.[7] When the prosecution fails to offer evidence at trial in support of what was stated during opening statements, it is a prosecutor's burden to show that the opening statement was made in good faith. In

---

[4] *Alexander*, supra at n. 4.
[5] Id. at 349.
[6] Id. See *Cargill v. State*, 255 Ga. 616, 635-636 (340 SE2d 891) (1986).
[7] *Cargill*, supra.

this matter, when Hartry moved for a mistrial due to the prosecution's failure to offer evidence of gang activity, the State made no explanation for its failure to make such a proffer. Accordingly, as we found in *Alexander*, we cannot conclude that the prosecution's opening statement was made in good faith.[8]

Regarding the trial court's curative instructions, because the prejudicial impact of the prosecution's opening statement was great, the trial court's general charge that opening statements are not evidence, without specific mention of the State's improper references to gang activity, was not sufficient.[9] Therefore, as we did in *Alexander*, we must conclude that under the circumstances of this case, the prosecution's failure to offer proof of gang activity in the presentation of its case after telling the jury that the evidence would show that the murder was gang-related warranted the granting of Hartry's motion for mistrial, and the trial court abused its discretion in ruling otherwise.

However, having closely reviewed the transcript of the trial proceedings, we conclude that any error resulting from the trial court's abuse of discretion was harmless. As explained above, the testimony of six eyewitnesses, and two of Hartry's co-defendants, showed overwhelmingly that it was Hartry who fired the nine millimeter bullet that killed the victim. The evidence was overwhelming that there were only two individuals in the back of the truck at the time of the shooting — Hartry and Vasser. Of those two, the evidence inexorably shows that it was Hartry who fired a nine millimeter pistol at the group of people gathered on Ms. Brown's front porch, killing the victim in the process. In contrast, the evidence is conclusive that Vasser did not even fire a handgun at the gathering; rather, he fired a shotgun into the air. The record reveals no evidence that any of the shots fired by Vasser struck in the vicinity of Ms. Brown's home.

Thus, the facts attending Hartry's appeal are very different from those relative to the appeal of his co-defendant, Alexander. As noted in our opinion reversing Alexander's conviction, it was undisputed at trial that Alexander did not fire one of the weapons in this matter, and the State's case against Alexander was based upon circumstantial evidence that he was a party to the crime.[10] In contrast, as shown by the facts recited above, there is overwhelming direct evidence that Hartry actually fired the fatal shot.

Accordingly, in light of the overwhelming evidence that Hartry shot and killed the victim, and the dearth of evidence to indicate otherwise, we conclude that the failure to grant Hartry's mistrial motion

---

[8] See *Alexander*, supra at 350.
[9] See id. at 350-351.
[10] Id. at 351.

based upon the prosecution's unsupported statement regarding gang activity was harmless error.[11]

3. The trial court did not err in permitting the State to introduce into evidence the shirt worn by Hartry at the time of the murder. At least four witnesses identified the shirt as the one worn by Hartry during the murder; hence, there was sufficient evidence that it belonged to Hartry. Because the shirt was a distinct and recognizable physical object that could be easily identified simply by observation, it was not necessary to establish its chain of custody prior to its admission.[12]

Finally, the shirt was inculpatory and not exculpatory, and thus was not covered by Hartry's pretrial *Brady* motion.[13] *Brady*, of course, requires the State, upon the defendant's motion, to disclose all exculpatory evidence at the time of trial.[14] Hartry has not explained, and this Court cannot fathom how, the shirt he wore at the time of the murder can be considered exculpatory. Hence, it clearly did not fall within the ambit of *Brady*.[15]

*Judgment affirmed. All the Justices concur, except Hunstein, Carley and Hines, JJ., who concur specially.*

CARLEY, Justice, concurring specially.

I concur fully in Divisions 1 and 3 of the opinion and in the judgment affirming Hartry's conviction. However, for the reasons set forth in my dissent in *Alexander v. State*, 270 Ga. 346 (509 SE2d 56) (1998), I cannot join Division 2 and its holding that the trial court's failure to grant a mistrial was an abuse of discretion.

I am authorized to state that Justice Hunstein and Justice Hines join in this opinion.

DECIDED FEBRUARY 8, 1999 —
RECONSIDERATION DENIED MARCH 5, 1999.

*Buafo & Associates, Althea L. Buafo,* for appellant.

*Fredric D. Bright, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Frank A. Ilardi, Assistant Attorney General,* for appellee.

---

[11] See *Price v. State*, 233 Ga. 332 (211 SE2d 290) (1974) (finding harmless any error associated with the prosecutor's opening statement as to what he expected to prove by evidence that was determined to be not admissible).

[12] *Harper v. State*, 251 Ga. 183, 185 (304 SE2d 693) (1983).

[13] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[14] Id., 373 U. S. at 87.

[15] *Ross v. State*, 254 Ga. 22, 29 (326 SE2d 194) (1985).