A02A0022. DOWNING v. THE STATE.
(564 SE2d 828)

MILLER, Judge.

Daniel Currean Downing was convicted of one count of kidnapping, three counts of aggravated assault, one count of burglary, and possession of a firearm during the commission of a crime. Following the denial of his motion for new trial, Downing filed this appeal. Downing contends that the trial court erred in permitting the State to introduce bad character evidence by allowing testimony about his and his co-defendant's involvement in gang activity. We discern no error and affirm.

Viewed in the light most favorable to the verdict, the evidence established that early one morning, Mark Lorenzo Squires sought Downing's help because Squires suspected that his girlfriend was dating someone else. Agitated and angry, Squires asked Downing if he had a pistol. Downing provided him with a .380 caliber Sig Sauer

semi-automatic. Riding together in Squires's car, the two men proceeded to the girlfriend's house. As they neared her residence, they spotted a car parked in front of the house, so Squires drove to the end of the street where they could monitor the house. Minutes later, the girlfriend, her 12-year-old brother, and another man exited the house and began walking toward the parked car. Downing and Squires confronted them, and, at gunpoint, Squires ordered Charles Fubler out of the car. Fubler complied but managed to run to the front door and lock himself inside. When Squires could not open the front door, he fired into the door and then proceeded to kick open a side door. While Squires chased down Fubler, Downing grabbed the girlfriend and her brother. Downing forced both of them to the side door, where the brother entered first. By that time, Squires had already gunned down Fubler, shooting him in the head and chest. When the younger brother entered the kitchen, Squires shot him in the upper chest. As the girlfriend struggled desperately with Downing, trying to remove his hands from her neck, Downing overpowered her and forced her inside, where Squires shot her. A lone bullet pierced Downing's arm while he was restraining her, entering the victim's spine. After the shootings, Downing and Squires fled immediately with Downing driving Squires's car back to his trailer. To enable Squires to elude capture by going to Atlanta, Downing provided him with $200. Later that same day, Downing obtained medical treatment for the gunshot wound to his left wrist.

Although the three victims survived, Squires's girlfriend and her male friend sustained permanent disabilities. As a result of the bullet still lodged in her spine, the girlfriend remains paralyzed from the chest down, and her erstwhile companion has complications from a severe head injury. As a result of the shooting, he is now partially blind in both eyes and he forfeited some short-term memory ability, reading comprehension skills, and other mental acuity.

After waiving his rights, Downing provided police with his version of events. In a tape-recorded statement, Downing claimed that he had struggled with the girlfriend and her brother in order to keep them out of harm's way because "I know my partner's mad" and due to his concern that Squires would shoot her too. By Downing's account, he was just trying to calm her down. An investigator who took a Polaroid of Downing prior to interviewing him testified that Downing flashed a gang-related hand sign while being photographed. At the time of the trial, Squires remained at large and was thought to be hiding in California where the Federal Bureau of Investigation was trying to locate him.

During the trial, the State elicited testimony tending to show that Downing and Squires were both connected to youth gangs. Nearly all of the objected-to testimony pertained to Squires and not

Downing. Over objection, an investigator was allowed to testify about Squires's gang affiliation. The officer testified that "[o]ur investigation shows that [Squires] also met with a gang called the Crips which has a chapter in Atlanta, and that he was going to stay with them awhile, and perhaps get help from them to get to California. He had previously been in California and was a member of the Crips gang." Similarly, the girlfriend's little brother was permitted to testify over objection that Squires had told him that he was affiliated with the Crips gang on the West Coast and "about how he attempted murder and stuff like that." He also testified that Squires had said "something about Westside Crip, Gear Street; Gear Gang Crip, something like that." He recalled seeing tattoos on Squires's chest and arm. Squires's girlfriend testified without objection that when she first met Squires, he told her that he had just been released from prison and about "the gang life." But Downing interposed an objection when she was asked to describe the five or six tattoos that covered Squires's body. Over defense objection, she testified that "[t]hey were gang signs. They were like Crips and tattoos of like a tower with clocks symbolizing when you did time, and like a bunch of gang signs all over his body." Another officer was allowed to testify as to whether Downing had mentioned having any relationship to any gang, stating that "[Downing] did say that he was with the Eighth and Grand Boys which is a group down on Eighth Avenue and Grand Boulevard."

In this appeal, Downing contends that the State impermissibly injected his character into the trial. He claims that the State deliberately and continually elicited testimony about alleged gang activity and gang affiliation. Downing asserts that his character "suffered assault and destruction at the hands of the State."

The admission of evidence is a matter within the sound discretion of the trial court, and material evidence does not become inadmissible because it incidentally places the defendant's character in issue. *Price v. State*, 269 Ga. 373, 374 (2) (497 SE2d 797) (1998). Evidence of membership in a gang is admissible to show a motive for a defendant's criminal conduct. *Mallory v. State*, 271 Ga. 150, 153 (6) (517 SE2d 780) (1999). Although the State must make the evidence at issue relate to its case, it is not required to prove that the crimes committed were in furtherance of gang activity. See *Wolfe v. State*, 273 Ga. 670, 674 (4) (d) (544 SE2d 148) (2001).

Here, it is apparent that much of Downing's criminal liability for the commission of the indicted offenses was derivative. Squires was the main perpetrator while Downing acted as his accomplice and as a party to the crimes. As such, the State was entitled to show that the two culprits were closely associated in such a way as to be expected to aid and support each other in committing these crimes and to show that Downing's presence at the crime scene was not mere happen-

stance. See *Hayes v. State*, 265 Ga. 1, 3 (6) (453 SE2d 11) (1995), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999).

Although Downing contends that his conviction was the result of circumstantial evidence and that the probative value of the "gang evidence" was "virtually non-existent," the transcript belies these assertions. Downing admitted providing Squires with the sole firearm used in the shootings. Downing willingly accompanied Squires to the crime scene and referred to him as "my partner." Once there, Downing physically restrained the girlfriend and her brother, foreclosing their escape and enabling Squires to shoot them. The girlfriend and her brother both identified Downing and testified about Downing's actions during their ordeal. Thus, even if admission of testimony about the gang affiliations had been error, the evidence of Downing's guilt is so overwhelming that any error would have been harmless. See *Hartry v. State*, 270 Ga. 596, 599 (2) (512 SE2d 251) (1999).

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED MAY 2, 2002.

*Garrett & Gilliard, Michael C. Garrett,* for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.

