## A03A0044. JOHNSON v. THE STATE.
### (581 SE2d 715)

MIKELL, Judge.

Gary Johnson was convicted of three counts of armed robbery, three counts of possession of a firearm during the commission of a crime, one count of burglary, one count of theft by receiving, and one count of financial transaction card fraud. On appeal, Johnson challenges the sufficiency of the evidence and the conduct of the prosecutor in introducing character evidence. He claims the trial court erred in admitting into evidence certain of his custodial statements to

---

[1] 254 Ga. App. 297, 302-303 (1) (b) (562 SE2d 201) (2002).

[2] *Cash v. State*, 254 Ga. App. 718 (563 SE2d 459) (2002).

[3] 276 Ga. 423 (577 SE2d 551) (2003).

police, a witness's pre-trial photographic identification, and a gun. Johnson also contends that he received ineffective assistance of counsel. We affirm.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict.[1] So viewed, the evidence shows that on December 5, 2000, Scotty Flakes was driving his car to a friend's apartment. When he pulled up in the drive next to a dumpster he saw two teenaged boys. One of the young men, who was wearing a bandanna over the lower part of his face, approached Flakes, produced a gun, and told him, "Give me your keys." Flakes handed his keys to the young man, and the young man, who appeared to be an inexperienced driver, left in Flakes's car. Flakes identified Johnson as the person who took his car in court and in a photographic lineup.

On January 15, 2001, someone broke into the Mr. Cash Title Pawn on South Lumpkin Road and took several guns. A detective found a handgun taken from the pawnshop in Johnson's bedroom. Joel Jamar Martin testified that he, along with Johnson and two other young men, burglarized the pawnshop.

On February 6, 2001, Matthew Sage was putting gas in his car at a filling station when a young man appeared, wearing a bandanna from the nose down. The young man put a gun in Sage's face and told him, "give me your wallet." Sage gave him his wallet, and the young man ran off. Sage identified Johnson as the gunman, both in court and from a photographic lineup.

On February 8, 2001, Mary Ann Woyke was walking to the front of a Winn-Dixie store from the parking lot when she was approached by two males wearing bandannas. One of them had a gun with his finger on the trigger, as if he was ready to shoot her, and he said, "Let me have your purse." Woyke relinquished her purse. She identified Johnson as the gunman in a photographic lineup and in court.

Detective Randy Long testified that the contents of Woyke's purse included a credit card and a cell phone, which were used to order tennis shoes from the Eastbay company. Testimony also showed that the cell phone was used to call several of Johnson's friends. Christopher Myles, who had participated in committing other crimes with Johnson, testified that Johnson said he had robbed a lady at the Winn-Dixie and that he had stolen her credit card and cell phone.

1. Johnson claims the verdict is contrary to the evidence. We have reviewed the record and find that the evidence is sufficient for a

---

[1] *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

rational trier of fact to conclude beyond a reasonable doubt that Johnson was guilty of the crimes of which he was convicted.[2]

Johnson suggests that identification was impossible because the perpetrator wore a mask. But the fact that the perpetrator wore a mask does not render a witness's identification unreliable.[3] Moreover,

> [i]dentity is a question for the trior of fact, and where a witness identifies a defendant (whether the identification be based on the defendant's eyes, clothes, hairline or some intangible factor not capable of description), the credibility of the witness making such identification is not to be decided by this court.[4]

The jury decided this issue adversely to Johnson, and we will not disturb its verdict.

2. Johnson contends the state committed prosecutorial misconduct by improperly introducing character evidence. The prosecutor asked Detective Long, "Did [Johnson] tell you about activities in Miami?" Detective Long testified that Johnson told him that he had been involved in gang activity in Miami. Defense counsel objected that the questioning went beyond the trial court's instructions regarding the admission of Johnson's statements to police. After the objection, the trial court told the jury to disregard "anything he says about allegedly being in any gang in Miami."

"[T]he decision to give curative instructions to the jury rather than grant the mistrial request following the introduction of bad character evidence is within the discretion of the trial court and is not error."[5] Even if the prosecutor should not have asked the question about Johnson's Miami activities, Johnson received an appropriate remedy and defense counsel acknowledged the instructions to the jury and made no further objections or motion for mistrial. No reversal is warranted. Johnson's other claims of prosecutorial misconduct in connection with the introduction of other character evidence are waived for failure to object.[6]

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *Jackson v. State*, 243 Ga. App. 289, 293 (3) (h) (531 SE2d 747) (2000) ("Although the assailants wore masks during the robbery, we do not find that a full-faced lineup makes the victim's identification of [defendant] unreliable.").

[4] (Citations and punctuation omitted.) *Wimberly v. State*, 233 Ga. 386, 387 (3) (211 SE2d 281) (1974).

[5] (Citation and punctuation omitted.) *Williams v. State*, 247 Ga. App. 88, 90 (2) (543 SE2d 402) (2000).

[6] See *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996).

3. Johnson contends the trial court erred in admitting his custodial statements to Detective Long and Officer Mills because the police did not adhere to the juvenile code's requirements for his detention[7] and that, as a juvenile, the voluntary nature of his statements is subject to greater scrutiny.[8] We disagree.

Police failure to comply with the juvenile code's detention requirements does not automatically exclude a custodial statement by the juvenile.[9] "The issue is whether there was a knowing and intelligent waiver by [the defendant] of his constitutional rights in making the incriminating statement, assessed under the totality of the circumstances."[10]

The factors that a court must consider include:

The age of the accused; the education of the accused; the knowledge of the accused as to the substance of the charge and nature of his rights to consult with an attorney; whether the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the accused was interrogated before or after formal charges had been filed; methods used in interrogation; length of interrogation; whether accused refused to voluntarily give statements on prior occasions; and whether accused repudiated an extrajudicial statement at a later date.[11]

The record shows several factors which support the trial court's conclusion that Johnson's statements to police were voluntary. The police informed Johnson of his *Miranda* rights using a form designed to be easier for minors to understand. Johnson was 16 when he was questioned. He either was in the tenth grade, or had completed the tenth grade, according to the "Advice of Rights to Juvenile" which he signed. Thus, Johnson was of sufficient age and education level to understand his waiver of rights.[12] The length of his questioning while in custody appears to have been reasonably short, and Detective Long testified that Johnson was not threatened or coerced.[13] Johnson was not denied access to an attorney.

On the other hand, Johnson testified that he did not talk to the

---

[7] See OCGA § 15-11-47 (a) (3).

[8] *Crawford v. State*, 240 Ga. 321, 323 (1) (240 SE2d 824) (1977).

[9] *Attaway v. State*, 244 Ga. App. 5, 6 (534 SE2d 580) (2000).

[10] *Gilliam v. State*, 268 Ga. 690, 692 (3) (492 SE2d 185) (1997).

[11] (Citation omitted.) *McKoon v. State*, 266 Ga. 149, 150 (2) (465 SE2d 272) (1996).

[12] See *Attaway*, supra at 7 (15-year-old sufficiently mature to understand *Miranda* rights).

[13] See *Byrd v. State*, 274 Ga. 58, 60 (2) (548 SE2d 2) (2001) (testimony showed that minor defendant was not threatened or coerced by police during questioning).

police voluntarily and he was not questioned in the presence of a parent or guardian. But credibility determinations made by a trial court after a suppression hearing must be accepted by the appellate court unless clearly erroneous.[14] Under the totality of the circumstances, we conclude that the trial court's decision to admit Johnson's custodial statements to Detective Long and Officer Mills was not clearly erroneous.

4. Johnson contends that the search of his person by Officer Trumble was illegal, and that the trial court erred in admitting the handgun discovered as a result of the search. However, Johnson first moved to suppress the gun found on his person by oral motion at trial. Motions to suppress evidence allegedly seized in an unlawful search must be filed before arraignment.[15] They must also be in writing.[16] The trial court correctly ruled that Johnson had waived his right to challenge the search of Johnson's person and to suppress the gun.

5. Johnson claims the trial court erred in admitting Flakes's pretrial photographic identification of him. But Johnson did not object when the police officer who conducted the lineup testified that Flakes identified Johnson as the gunman, when the photographic lineup was entered into evidence, or when Flakes testified that he identified Johnson in the lineup. Having failed to object at trial, the issue is waived on appeal.[17]

6. Johnson claims he was denied effective assistance of counsel.

In order to establish ineffectiveness of trial counsel under *Strickland v. Washington*, [Johnson] must show both that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[18]

Johnson complains that his trial counsel: (i) failed to file a motion to suppress identity evidence provided by the photographic lineup shown to Flakes, where Flakes knew three of the subjects in the lineup; (ii) failed to file a motion to suppress the handgun found on his person; and (iii) failed to object to the introduction of evidence of his bad character. We find no showing of an objectively unreason-

---

[14] *Johnson v. State*, 233 Ga. 58 (209 SE2d 629) (1974).
[15] See *Copeland v. State*, 272 Ga. 816, 817 (2) (537 SE2d 78) (2000).
[16] Id., citing OCGA § 17-5-30 (b).
[17] *Hines v. State*, 246 Ga. App. 835, 837 (2) (541 SE2d 410) (2000).
[18] (Footnotes omitted.) *Jackson v. State*, supra at 291 (3).

able performance by trial counsel because "failure to make a merit-less objection cannot be evidence of ineffective assistance."[19]

(a) Flakes was shown pictures of six young men in the photographic lineup. He testified that he "recognized three of the boys on the pictures." Flakes identified one of the three as the person who robbed him. He also identified Johnson in the courtroom.

> Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.[20]

This record does not show a procedure designed to lead to the inevitable identification of Johnson as the perpetrator.[21] We cannot say it was an objectively unreasonable performance for defense counsel to fail to object to the photographic lineup.

(b) Police responded to a report that there were two teenagers with a handgun at an intersection in the Oakland Park Subdivision. When police arrived at the intersection they saw two young men. After "coaxing" them to put their hands on their head, Officer Trumble located a hard metal object that felt like a gun during what she described as a "pat-down" for the officer's safety. The record indicates that the weapon was discovered in a permissible frisk[22] after Johnson was stopped for reasonable suspicion of criminal activity.[23] We conclude that it was not an objectively unreasonable performance for defense counsel to fail to make a motion to suppress the gun.

(c) The prosecutor's questioning of Officer Mills[24] showed that Johnson told police that his gang wore bandannas when "they went to do dirt in a cowboy style fashion." In opening argument, the prosecutor stated, "Johnson is the leader of the gang." Defense counsel did not object.

The state may not present evidence of the defendant's general

---

[19] (Footnote omitted.) *Scott v. State*, 254 Ga. App. 728, 731 (4) (a) (563 SE2d 554) (2002).

[20] (Footnote omitted.) *Jackson v. State*, supra at 293, (3) (h).

[21] See *Williams v. State*, 275 Ga. 622, 623 (2) (571 SE2d 385) (2002).

[22] See *Corley v. State*, 236 Ga. App. 302, 304 (1) (a) (512 SE2d 41) (1999).

[23] See, e.g., *West v. State*, 194 Ga. App. 620, 621 (391 SE2d 673) (1990) (police can perform a *Terry*-type stop based on detailed information provided by an unknown informant and confirmed in part by police observation).

[24] Johnson also complains of testimony by Officers Lockhart and Trumble concerning his statements describing gang activity. This contention is unsupported by reference to Lockhart's and Trumble's testimony, and our review of the record reveals no such statements.

bad character unless the defendant has put his character in issue.[25] But evidence which incidentally puts the defendant's character into issue may be admitted if the evidence is introduced for a proper purpose.[26] Mills's testimony was relevant to the issue of identity because the gunman who accosted Flakes, Sage, and Woyke wore a bandanna, as did the members of Johnson's gang when they were engaged in illegal activity. Gang membership is also admissible to show motive.[27] It follows that defense counsel did not demonstrate an objectively unreasonable performance by failing to object to the testimony of Officer Mills.

Johnson cannot show improper conduct in the prosecutor's opening statements. A prosecutor's opening statements should be limited to what the prosecutor expects to prove at trial.[28] If a prosecutor claims in opening statements that a defendant is involved in gang activity and that claim was not made in good faith, then the defendant has grounds for a mistrial.[29] In the case at bar, however, Mills's later testimony showed that Johnson admitted to being part of a criminal gang. It follows that defense counsel did not demonstrate an objectively unreasonable performance by failing to object to the opening statement by the prosecutor.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED MAY 2, 2003.

*Mark A. Casto*, for appellant.
*J. Gray Conger, District Attorney, Julia A. Slater, Assistant District Attorney*, for appellee.

[25] OCGA § 24-9-20 (b).
[26] *Downing v. State*, 255 Ga. App. 225, 227 (564 SE2d 828) (2002).
[27] Id.
[28] *Alexander v. State*, 270 Ga. 346, 349 (2) (509 SE2d 56) (1998).
[29] *Hartry v. State*, 270 Ga. 596, 598-599 (2) (512 SE2d 251) (1999).