**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 25, 2015**

# In the Court of Appeals of Georgia

A15A1219. HOWARD v. THE STATE.

McFADDEN, Judge.

After a jury trial, Garrett Delmar Howard III was convicted of aggravated assault (OCGA § 16-5-21 (c)) and possession of a firearm during the commission of a crime (OCGA § 16-11-106). Howard argues that the trial court erred in denying his motion for directed verdict, but evidence authorized the jury's verdict of guilty. Howard argues that the trial court erred in admitting evidence of inculpatory statements he made when he was 15 years old, but the statements were spontaneous utterances that did not implicate Howard's Fifth Amendment rights. Finally, Howard argues that the trial court erred in failing to give one of his requested jury charges regarding the inculpatory statements, but the record shows that the requested charge was not adjusted to the evidence. Accordingly, we affirm.

1. *Directed verdict.*

On appeal, we review the denial of a directed verdict of acquittal in a criminal case under the standard of review set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See *Rivers v. State*, 296 Ga. 396, 404 (10) (768 SE2d 486) (2015); *Stansell v. State*, 270 Ga. 147, 148 (1) (510 SE2d 292) (1998). Accordingly, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U. S. at 319 (III) (B) (citation omitted; emphasis in original).

So viewed, the evidence showed that in the early afternoon of December 3, 2011, a convenience store employee called 911 after seeing 15-year-old Howard, whom he recognized as an occasional store customer, waving a gun and arguing with someone outside the store. Corporal Donald Chad Cheek, a uniformed law enforcement officer driving to a special assignment, heard a dispatch call about "trouble with a subject with a gun," and shortly thereafter saw someone, whom he later identified as Howard, standing outside, jumping up and down, waving a handgun, and screaming. Officer Cheek pulled his vehicle near Howard and turned

on his emergency lights and siren. Howard turned toward the officer, pointed the gun directly at Officer Cheek's face and shot at him.

Howard fled, and Officer Cheek chased him on foot. The two exchanged gunfire during the chase. Ultimately Howard escaped but was arrested several days later. As a law enforcement officer at the sheriff's office walked Howard down a hallway to the booking desk, Howard spontaneously "apologiz[ed] for what had happened." He stated "that he was angry at the time and wanted to write Mr. Officer Chad Cheek a letter of apology." He also asked repeatedly "how much time he was going to get over this."

Howard argues that the trial court should have granted his motion for directed verdict because the state did not present sufficient evidence that he was the perpetrator, especially given some discrepancies in witness descriptions of his apparent age and height. But Officer Cheek affirmatively identified Howard as the perpetrator, both from a photographic lineup conducted a few hours after the shooting and in court during trial. It was for the jury to gauge the credibility of the officer's identification. *Colzie v. State*, 289 Ga. 120, 121 (1) (710 SE2d 115) (2011). The trial court did not err in denying the motion for directed verdict of acquittal. See id. at 121-122 (1).

3

2. *Suppression of evidence of Howard's statements.*

Howard argues that the trial court erred in admitting evidence of the statements of apology he made as a law enforcement officer walked him to the booking desk at the sheriff's office. He argues that the statements should have been suppressed because some of the statutory booking procedures for juveniles then in effect, see former OCGA §§ 15-11-47 (setting forth procedures for taking child into custody) and 15-11-48 (setting forth procedures for detaining child alleged to have committed violent offense),[1] were not followed, noting that the record was silent as to whether he had been allowed to speak with either a family member or attorney before he made the statements. He also argues that his Fifth Amendment right against self-incrimination was violated. We disagree.

Our Supreme Court has held that a "violation of the Juvenile Code does not render [a juvenile's] incriminating statement per se inadmissible." *Hanifa v. State*, 269 Ga. 797, 805 (3) (505 SE2d 731) (1998); see also *Johnson v. State*, 261 Ga. App. 98, 101 (3) (581 SE2d 715) (2003). "The relevant inquiry is not whether the [booking] procedures were followed to the letter before [a juvenile made a] statement

---

[1] Current Code provisions setting forth the procedures for detaining and taking a child into custody are at OCGA §§ 15-11-500 et seq.

4

. . . , but whether [the juvenile] made a knowing and intelligent waiver of his constitutional rights when he gave the incriminating statement." *Williams v. State*, 273 Ga. App. 42, 45 (4) (614 SE2d 146) (2005); see also *Johnson*, 261 Ga. App. at 101 (3). Howard argues that he made the statements in violation of his Fifth Amendment right against self-incrimination, and he cites the lack of evidence in the record addressing factors relevant to a juvenile's waiver of rights. See generally *Johnson*, 261 Ga. App. at 101 (3). The Fifth Amendment, however, concerns statements made by an accused during custodial *interrogation*. See *Franks v. State*, 268 Ga. 238, 239 (486 SE2d 594) (1997). A person's Fifth Amendment rights are not implicated when that person makes a spontaneous, unprompted utterance while in custody. See *Haggins v. State*, 277 Ga. App. 742, 745 (2) (a) (627 SE2d 448) (2006). Because the undisputed evidence in this case showed that Howard made the statements at issue to a law enforcement officer spontaneously, and not in response to any police interrogation, the trial court did not err in allowing the jury to hear evidence of those statements. See id.

3. *Jury charge.*

Howard argues that the trial court erred in declining to give his requested jury charge regarding the factors relevant to a determination of whether a statement by a

5

juvenile was made with a knowing and intelligent waiver of his or her constitutional rights. But as discussed above, because Howard made a spontaneous utterance, his constitutional rights were not implicated. Consequently, Howard's requested jury charge was not adjusted to the facts of this case and the trial court did not err in declining to give the charge. See *Gardner v. State*, 273 Ga. 809, 813 (6) (546 SE2d 490) (2001) (a "requested charge must be legal, apt and precisely adjusted to some principle involved in the case and be authorized by the evidence" and a trial court does not err in not giving a requested charge that fails to meet these requirements) (citations and punctuation omitted).

*Judgment affirmed. Ellington, P. J., and Dillard, J., concur*.