S07A1439. FELTON v. THE STATE.
(657 SE2d 850)

HINES, Justice.

Dion N. Felton appeals his convictions for malice murder and two counts of aggravated assault in connection with the death of Elizabeth Davidson, the shooting of Diana Lynn Salyers, and the assault, by a pistol, of Frances J. Ryan. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Felton, aged 16, along with Shawn Hightower, Eric Jackson, Jarvis Wimberly, and Cedric Poole, was at a bar known as the Fast Track Lounge. Shortly after midnight, two men, considered by Felton and his friends to be gay, angered Felton by looking at him in what Felton believed was a sexual manner. Felton confronted the men verbally, and the two men left the Fast Track. Felton and his companions went into the street, and Felton told his companions that he wanted a fashion chain one of the two other men wore. The two targeted men went into another nearby bar, the Pegasus Lounge, and Felton and his companions followed.

---

[1] The crimes occurred on January 14, 1993. On May 13, 1993, a Bibb County grand jury indicted Felton and Shawn Hightower for the malice murder of Davidson and the aggravated assault of Salyers; Felton was also indicted for the aggravated assault of Ryan. Felton was tried alone before a jury July 6-7, 1993, and found guilty of all charges. On July 9, 1993, the trial court sentenced Felton to a term of life in prison for malice murder, a consecutive term of 20 years in prison for the aggravated assault of Salyers, and, for the aggravated assault of Ryan, a term of 20 years in prison to be served concurrently with the term of life in prison. On September 28, 2006, the trial court entered a consent order granting Felton an out-of-time appeal. Felton filed a motion for new trial on October 26, 2006; the trial court denied the motion on March 28, 2007. Felton filed a notice of appeal on April 18, 2007, and his appeal was docketed in the Court of Appeals of Georgia on May 22, 2007; that Court transferred the appeal to this Court on June 4, 2007, the appeal was docketed in this Court on June 7, 2007, and submitted for decision on July 30, 2007.

Several patrons of the Pegasus Lounge testified that four men came into the lounge and became disruptive, throwing coins on a pool table while a game was in progress and getting into a verbal altercation with lounge patrons; one of the men pointed a pistol at Ryan. None of these witnesses identified Felton as one of the four, but all testified that of the men who entered, the one wearing a red bandanna argued with Ryan, and pointed a pistol at her. The man did not fire, but left the establishment. An hour and a half later, two of the men returned to the Pegasus Lounge, and according to witnesses, the same man who had earlier pointed the pistol at Ryan, still wearing the red bandanna, began shooting, hitting Diana Salyers and Elizabeth Davidson; Salyers survived, but Davidson did not. The shooter's companion was wearing a dark blue bandanna.

A few hours after the shooting, investigating police officers received information that caused them to go to Felton's home. There, Felton's father said that Felton had been out the night before and often wore a red bandanna, and gave the officers permission to interview Felton. Felton gave his bandanna to an officer and stated that he had worn it the previous night. Felton went to the police station, where he recounted that: he, Hightower, Poole, Wimberly, and Jackson[2] were at the Fast Track Lounge; a gay man looked at Hightower; Hightower chased the gay man out of the Fast Track; Felton and the others went to the Pegasus Lounge; Hightower threw coins on a pool table, interrupting the game; Hightower spat into a patron's beer; they were asked to leave, and did so; Hightower said "I ain't going to let that go like that"; all the men returned to the Pegasus Lounge; Hightower covered his face with his blue bandanna; Hightower cocked a pistol that he had been given by Jackson, and Felton said "don't do it"; Hightower told Felton to move or be shot; Felton moved, and Hightower fired eight shots; Felton ran outside, where the group gathered again; Hightower gave the pistol to Jackson; Wimberly said "you better be glad she ain't dead"; Hightower replied "if she's dead, she's just dead"; and, Felton told Hightower he wanted a gold chain the gay man was wearing.

Hightower testified in the State's case-in-chief that: when the men first went into the Pegasus Lounge, Felton spat into a patron's beer and threw coins on a pool table to disrupt the game; when confronted by a patron of the lounge, Felton drew a pistol and "started pointing it around"; Hightower took the pistol and told Felton they should leave; the group left, and returned to the Fast Track, where Hightower gave the pistol to Jackson, who later returned it to Hightower, who hid it; Felton spoke of returning to the Pegasus

---

[2] In his statement, Felton referred to Jackson as "Eric Lewis."

Lounge to beat a patron who had confronted him; Felton retrieved the pistol from the known hiding place and said he would return to the Pegasus Lounge to beat the patron; Felton walked to the Pegasus Lounge with Hightower and Wimberly; when Felton entered the Pegasus Lounge, Hightower had only reached the entrance, with Wimberly behind him; Hightower ran when Felton began firing the pistol; Hightower, Felton, and Wimberly rejoined Jackson, who took the pistol from Felton; Felton said that he had "shot the club up"; Felton wore a red bandanna during the crimes; and, Hightower wore a dark blue bandanna.

Jackson testified for the State that: prior to first going into the Pegasus Lounge, Felton declared his intention to "shoot the place up," "scare them up," and take a necklace; Hightower and Felton requested Jackson's pistol; he gave his pistol to Hightower, who gave it to Felton; Jackson went to a telephone while the others walked in the direction of the Pegasus Lounge; after his telephone call, Jackson heard gunshots; Felton and Hightower were yelling "I did it, I did it, I did it"; Hightower handed Jackson his pistol; Jackson later threw the pistol into a river; and, Felton wore a red bandanna while Hightower wore a dark blue bandanna.

Felton presented two witnesses, Wimberly and Poole. Wimberly testified that: at the Fast Track, Felton said he wanted to take a chain from a gay man; Felton said he wanted to go into the Pegasus Lounge and shoot a pistol to scare the patrons; Hightower said not to do so; Hightower, Felton, and Jackson were "passing [the pistol] around"; Hightower gave Felton the pistol; Wimberly did not enter the Pegasus Lounge; before entering the Pegasus Lounge, Hightower had the pistol; after exiting the Pegasus Lounge, Hightower had the pistol; and, prior to Felton and Hightower entering the Pegasus Lounge, Felton, Hightower, Jackson, and Wimberly traded hats, coats, and bandannas.

Poole testified that: Felton said he wanted to get a necklace from a gay man; outside the Pegasus Lounge, Jackson gave Hightower the pistol; Hightower and Felton entered the Pegasus Lounge; Poole did not enter the Pegasus Lounge; he heard some shots; Felton and Hightower exited the Pegasus Lounge; Hightower returned the pistol to Jackson; the men gave back to each other articles of clothing they had borrowed from one another, Hightower returning to Felton his red bandanna; Felton said that he wanted to fight somebody; before going into the Pegasus Lounge, Felton spoke of "shooting up the place"; Poole commonly told people that Felton was his cousin; and, Felton was "like a cousin" to him.

1. The evidence was sufficient to enable a rational trier of fact to find Felton guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Felton claims that trial counsel failed in several respects to provide effective representation. In order to prevail on this claim, Felton must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, the defendant must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, the defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783.

(a) No *Jackson v. Denno*[3] hearing was held to test the admissibility of Felton's statement made at the police station. Counsel testified that he did not pursue a *Jackson v. Denno* hearing because he wanted the statement to come into evidence and place Felton's version of events before the jury without subjecting Felton to cross-examination. Felton now contends that counsel's strategy "insured" his convictions as, at least, a party to the crimes, because his statement supported the inference that Felton participated in the shooting with Hightower in hopes of gaining a gold chain, and that it identified Hightower as one wearing a blue bandanna, leaving Felton as the red-bandanna-clad shooter. However, in fashioning a defense, counsel must deal with the evidence and witnesses presented in the case. *Brady v. State*, 270 Ga. 574, 577 (4) (b) (513 SE2d 199) (1999). Felton's statement to the police included the claim that Felton told Hightower not to shoot, and that Hightower threatened to shoot Felton if he did not move, evidence that was not otherwise presented. Further, ample evidence other than Felton's statement identified him as wearing a red bandanna and showed behavior of his before and after the shootings that supported a finding that he was a party to the shootings. *Hewitt v. State*, 277 Ga. 327, 329 (1) (a) (588 SE2d 722) (2003). It was not unreasonable for counsel to favor the admission of Felton's statement over introducing its content through Felton's own

---

[3] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

testimony, thus subjecting him to cross-examination, nor was it unreasonable for counsel to favor the introduction of the statement rather than have Felton's version of events not be presented to the jury at all.[4]

(b) The red bandanna Felton gave the investigating police officer was introduced into evidence. Felton contends that trial counsel should have challenged the chain of custody regarding the bandanna. However, the officer to whom Felton gave the bandanna testified that the red and black bandanna entered into evidence was the same one that Felton had given her, and the bandanna was a distinct and recognizable physical object, identified by several witnesses as the one worn by the shooter, and no chain of custody objection would have been meritorious. *Young v. State*, 280 Ga. 65, 67 (5) (623 SE2d 491) (2005); *Hartry v. State*, 270 Ga. 596, 600 (3) (512 SE2d 251) (1999).

(c) Felton also asserts that the bandanna could have been suppressed as the result of an illegal search or arrest, but that is not the case. The officer to whom Felton gave the bandanna testified that she went to Felton's home in response to an anonymous tip, relayed from another officer. Although Felton characterizes this as a search or an arrest, the only evidence was that the investigating officer went to Felton's home to investigate the matter, and that it was in response to Felton's answers there, and his production of the bandanna, that caused him to be asked to go to the police station to give a statement. Contrary to Felton's characterization, no evidence was presented, either at trial or at the hearing on the motion for new trial, that Felton was placed under arrest or detained in his home on the basis of an anonymous tip. Compare *Vansant v. State*, 264 Ga. 319, 320-321 (2) (443 SE2d 474) (1994). Felton does not cite any case law that holds that law enforcement officers are not permitted to investigate information received from an anonymous tip.

(d) Felton further asserts that trial counsel should have objected to the investigating officer's testimony that she went to Felton's home in response to an anonymous tip received by another officer, arguing that this was double hearsay and was not admissible to explain the investigating officer's conduct. See *Weems v. State*, 269 Ga. 577, 578-579 (2) (501 SE2d 806) (1998). Assuming that this principle governs the issue and that an objection would have been sustained, in light of the other testimony produced at trial, it is highly probable that the testimony that the investigating officer went to Felton's home in response to an anonymous tip did not contribute to the jury's verdict. See *Brinson v. State*, 268 Ga. 227, 229 (3) (486 SE2d 830) (1997); compare *Brown v. State*, 274 Ga. 31 (549 SE2d 107) (2001).

---

[4] Counsel testified that he urged Felton to plead guilty to a lesser charge.

Accordingly, Felton fails to show a reasonable probability that the result of his trial would have been different had the objection been made.

(e) At Felton's trial, Hightower testified for the State, and declared that he had pled guilty to a charge of conspiracy to commit aggravated assault, and that when he did so, it was without any agreement concerning that charge or his testimony in Felton's trial. Felton contends that trial counsel's cross-examination of Hightower was insufficient, and that counsel could have explored Hightower's belief concerning what sentence he could have received for murder, what sentence he might receive for conspiracy to commit aggravated assault, and whatever other bias Hightower might have for testifying as he did. See *State v. Vogleson*, 275 Ga. 637, 639-640 (1) (571 SE2d 752) (2002). Trial counsel testified that he wished to minimize Hightower's exposure to the jury in light of the fact that Hightower testified that Felton was the shooter. In any event, at the hearing on the motion for new trial, Felton did not call Hightower to testify, did not produce evidence of the sentence Hightower received, and did not otherwise introduce any evidence showing that further testimony from Hightower on cross-examination would have been any different from his testimony on direct examination. Hence, Felton fails to show how further cross-examination of Hightower would have produced a different result in his trial.

*Judgments affirmed. All the Justices concur, except Carley, J., who concurs in the judgment only.*

DECIDED FEBRUARY 25, 2008 —
RECONSIDERATION DENIED MARCH 10, 2008.

*Buafo & Associates, Bernadette C. Crucilla*, for appellant.
*Howard D. Simms, District Attorney, Dorothy V. Hull, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.