674 S.E.2d 56 (2009)
THOMAS
v.
The STATE.
No. A08A1820.
Court of Appeals of Georgia.
February 18, 2009.
*57 Tricia J. Hendon, for appellant.
Fred A. Lane Jr., District Attorney, Anthony Volkodav, Jr., Assistant District Attorney, for appellee.
PHIPPS, Judge.
Following a jury trial, Michael David Thomas was convicted of one count each of aggravated child molestation, statutory rape and child molestation. Thomas claims that the trial court erred in failing to give a requested jury charge and that his trial counsel was ineffective. Because Thomas has failed to show that the trial court erred or that his trial counsel was ineffective, we affirm.
The evidence showed that Thomas met the victim, A.M., when she was in sixth grade. Thomas was a physical education teacher at the middle school A.M. attended. Thomas recruited A.M. to join the school's seventh grade basketball team that he coached. He also coached the soccer and softball teams that A.M. joined during her seventh grade year and he gave her private instruction. In eighth grade, A.M. continued participating in those sports, coached by Thomas, until she injured her knee. A.M. had knee surgery, and Thomas helped with her rehabilitation.
After the surgery, their relationship changed and they began to communicate by e-mail without her parents' knowledge. Some of Thomas's messages were sexual in nature. Thomas then purchased A.M. a cellular telephone, telling her that it would provide another way to communicate without her parents' knowledge. Thomas sent her text messages on the new phone, telling her that he loved and missed her and asking her to come to his classroom after school. One day when A.M. went to Thomas's classroom after school, he told her to stand next to him, asked her to kiss him, and then put his hands up her shorts and touched her vagina. A.M. was 14 years old at the time.
The next incident occurred the same year at A.M.'s house. Thomas and A.M. went into her bedroom where she put her mouth on his penis and he put his mouth on her vagina. A month later, Thomas went on a fishing trip with A.M. and her father to a lake house owned by Thomas's parents in Alabama. After everyone else went to bed, Thomas and A.M. had sexual intercourse. During the next three months, Thomas and A.M. had sexual intercourse five more times. These episodes also involved oral sex and occurred *58 at her house. Thomas used his cellular telephone to record some of the sexual acts and to take pictures of A.M.'s naked body. He also used the phone to send her pictures of his penis. All of these events occurred when A.M. was 14 years old.
During their relationship, Thomas bought A.M. several gifts, including a vibrator, which he inserted into her twice.
On June 19, 2005, A.M. called Thomas to tell him that she was home alone, and he came over. While Thomas had his pants and underwear down, touching A.M.'s vagina with his penis, A.M.'s brother came home. From outside the house, A.M.'s brother saw Thomas standing in front of his sister, with his pants and underwear at his feet. Thomas saw A.M.'s brother at the door and ran to the bathroom. After Thomas left the house, A.M.'s brother called their mother and told her what he had seen. Later that day, A.M.'s brother went to the police station and gave a statement. Thomas was subsequently arrested.
Thomas testified at trial and admitted the conduct underlying the three charges for which he was convictedA.M. placing her mouth on his penis, sexual intercourse with A.M. when she was fourteen years old, and exposing himself to A.M. and touching her vagina.
1. Thomas claims that the trial court erred by refusing to instruct the jury that "the law recognizes that there may be evidence pointing to guilt, without that evidence being sufficient to warrant conviction." The trial court declined to give the requested charge, reasoning that it was covered in the pattern charges about burden of proof and reasonable doubt, but informed Thomas's counsel that he could certainly argue the substance of the charge to the jury.
"The refusal to give a requested charge, even though it is a correct statement of law and pertinent and material to an issue in the case, is error only if it contains information that is not substantially covered by the charge actually given."[1] The trial court fully instructed the jury on the state's burden of proof and the concept of reasonable doubt, explaining that Thomas was presumed innocent until the state proved beyond a reasonable doubt that he was guilty of a charged offense. It was not necessary for the trial court to also charge the specific language Thomas requested.[2]
2. Thomas claims that his trial counsel was ineffective. To establish trial counsel's ineffectiveness, Thomas needed to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[3] The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[4] The test for reasonable attorney performance is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."[5]
When reviewing a trial court's ruling on trial counsel's effectiveness, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[6]
(a) Thomas argues that his trial counsel should have requested a limiting instruction contemporaneously with the testimony about the fishing trip to Alabama. He acknowledges that the trial court gave such an instruction in its general charge to the jury, but contends that trial counsel was deficient in failing to request one when the evidence was admitted.

*59 [E]vidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.[7]
When such evidence is admitted, the trial judge should instruct the jury of the limited use to which the jury may put such evidence.[8]
Here, trial counsel did not request a contemporaneous limiting instruction, but the jury was nonetheless instructed that evidence of prior occurrences between Thomas and A.M. could be considered for the limited purpose of illustrating, if it did so illustrate, the "state of feeling between the defendant and the alleged victim, and the bent of mind and course of conduct on the part of the defendant." Given this instruction and the admissions by Thomas, even if the failure to request a contemporaneous limiting instruction constituted deficient performance, Thomas has failed to show that but for this deficiency, the outcome of his trial would have been different.[9]
(b) Thomas contends that his trial counsel should have objected to testimony from A.M. about how her feelings for him had changed. Specifically, she testified, "He's evil. He robbed me of my innocence." Thomas argues that this was inadmissible and damaging character evidence.
At the motion for new trial hearing, trial counsel testified that he anticipated that A.M.'s testimony was about to end and he would have an opportunity to cross-examine her about the complained-of testimony. Trial counsel did cross-examine A.M. extensively about her change in feelings, having her read love letters she had written to Thomas and inquiring whether her feelings had changed only because they got caught and not because Thomas manipulated her in any way.
Assuming that an objection to A.M.'s testimony would have been sustained, in light of the other testimony at trial, particularly Thomas's admissions regarding the conduct underlying the charges for which he was convicted, it is highly probable that A.M.'s testimony about Thomas did not contribute to the jury's verdict.[10] Thus, Thomas has failed to show a reasonable probability that the result of his trial would have been different had the objection been made.[11]
(c) Thomas contends that his trial counsel should have objected to hearsay testimony from A.M.'s mother. Specifically, A.M.'s mother testified about her conversation with A.M.'s father in which he said, "You know, [Thomas] has gone over the line. He is so obsessive [about A.M.]."
The cited testimony, however, was merely cumulative of A.M.'s mother's own testimony that Thomas had become too involved in A.M.'s life to the point of becoming "psycho-obsessive." And given Thomas's testimony that he committed the sexual conduct underlying the offenses for which he was convicted, an objection to cumulative testimony that he was obsessed with A.M. would not have altered the outcome of the trial.[12]
(d) Thomas contends that his trial counsel should have reserved objections to the jury *60 charge to preserve his right to challenge the trial court's failure to give the jury charge discussed in Division 1 above.[13] Because Thomas has failed to show any error in failing to give the requested charge, "he cannot establish ineffective assistance of counsel based on his attorney's failure to reserve objections to the charge."[14]
(e) Relying on Schofield v. Holsey,[15] Thomas argues that the cumulative effect of his trial counsel's errors may have affected the jury's verdict. But even if we assume that trial counsel's failure to request a contemporaneous limiting instruction when evidence regarding the incident in Alabama was admitted, his failure to object to character evidence from A.M. and his failure to object to hearsay testimony from A.M.'s mother constituted deficient performance, considering the combined effect of those alleged deficiencies, we conclude that Thomas "has failed to show prejudice sufficient to [succeed on] his ineffective assistance of counsel claim."[16]
Judgment affirmed.
JOHNSON, P.J., and BARNES, J. concur.
NOTES
[1] Velazquez v. State, 282 Ga. 871, 877(7), 655 S.E.2d 806 (2008) (citation omitted).
[2] See id.; Buruca v. State, 278 Ga.App. 650, 653(2), 629 S.E.2d 438 (2006).
[3] Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[4] Id. at 687-689, 104 S.Ct. 2052.
[5] Stansell v. State, 270 Ga. 147, 150(2), 510 S.E.2d 292 (1998) (citations and punctuation omitted).
[6] Suggs v. State, 272 Ga. 85, 88(4), 526 S.E.2d 347 (2000) (citation omitted).
[7] Wall v. State, 269 Ga. 506, 509(2), 500 S.E.2d 904 (1998) (citations omitted); see also Goins v. State, 257 Ga.App. 406, 407-408(2), 571 S.E.2d 195 (2002) (evidence that defendant sexually abused victims while they were living together in another state admissible).
[8] Wall, supra.
[9] See Strickland, supra at 692, 104 S.Ct. 2052 ("any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance").
[10] See Felton v. State, 283 Ga. 242, 246-247(2)(d), 657 S.E.2d 850 (2008).
[11] See id. at 247, 657 S.E.2d 850.
[12] See Morris v. State, 284 Ga. 1, 4(3), 662 S.E.2d 110 (2008) (failure to object to hearsay evidence cumulative of admissible evidence did not amount to ineffective assistance); Ingram v. State, 262 Ga.App. 304, 309(5), 585 S.E.2d 211 (2003) (admission of cumulative hearsay evidence harmless; failure to object to such evidence did not alter trial's outcome).
[13] This trial took place in December 2006, before OCGA § 17-8-58, requiring specific objections to the jury charge and grounds therefor, became effective.
[14] Godfrey v. State, 274 Ga.App. 237, 240(1)(c), 617 S.E.2d 213 (2005) (citations omitted).
[15] 281 Ga. 809, 811-812(II), n. 1, 642 S.E.2d 56 (2007).
[16] Id. at 816, 642 S.E.2d 56; see generally Hall v. Brannan, 284 Ga. 716, 725(II)(D), 670 S.E.2d 87 (2008) (considering collective prejudicial effect of all counsel's deficiencies, found or assumed, and concluding that absence of those deficiencies would not in reasonable probability have changed trial's outcome).