## 41698. HILL v. THE STATE.
(326 SE2d 757)

SMITH, Justice.

Appellant, Johnny Frank Hill, was tried before a Colquitt County jury for theft by taking and the murder of Pearlie Mae Robinson. He was convicted on both counts. He was sentenced to ten years imprisonment for the theft count and life imprisonment for the murder conviction. On appeal, he raises ten enumerations of error. We affirm.[1]

Appellant lived with the victim in an apartment in Moultrie. The victim's father, who lived in the adjoining apartment, heard them talking as he left his apartment to take a walk on the day of the murder. When he returned from his walk, the victim's car was gone and no one answered the victim's doorbell.

The victim's father became curious and entered her apartment. There he found her sprawled on the floor in a pool of blood. She had been beaten and stabbed, and was dead. He ran across the street and called the police.

The police issued a warrant for appellant's arrest and commenced a search for the victim's car. They found the car near appellant's family home in neighboring Mitchell County. The fuel line had been cut, and the front seat had been burned. Appellant subsequently turned himself in to the Mitchell County police.

When appellant was returned to Colquitt County, the authorities there found traces of human blood on the bottom of one of his feet. They had earlier discovered bloody footprints on the floor of the vic-

---

[1] The crime was committed on March 9, 1984. The Colquitt County jury returned its verdict of guilty on August 15, 1984. A motion for new trial was filed on August 15, 1984, heard and denied on October 2, 1984. A transcript of the evidence was filed on September 4, 1984. Notice of appeal was filed October 10, 1984. The record was docketed in this court on November 6, 1984. The case was submitted on December 21, 1984.

tim's apartment. They also discovered appellant's fingerprints on the victim's car.

The victim's father testified that the victim had asked appellant to move out of the apartment because he had no job and no money. A friend of appellant and the victim testified that the victim and appellant had argued over money the night before the victim's death. The friend also testified that appellant had removed his clothes from the apartment at some point near the time of the victim's death.

1. Appellant raises the general grounds in four separate enumerations of error. The evidence presented at trial authorized a rational trier of fact to find appellant guilty beyond a reasonable doubt of murder as charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his fourth enumeration, appellant contends that the trial court erred in admitting into evidence duplicative pictures of the victim's battered face, and photographs of the upper portion of the victim's body after it had been washed and placed upon a table prior to an autopsy.

a. The trial court admitted into evidence five photos of the victim's face. Two of the photos were enlargements and two were taken from identical angles at different distances from the victim. These photographs were not pictures of an autopsy but of the crime scene and of the location of the injuries. *Brown v. State*, 250 Ga. 862, 866 (302 SE2d 347) (1983), was not violated here.

b. The trial court also allowed into evidence three black and white photographs of the victim's nude body awaiting an autopsy. Appellant claims that the trial court erred under *Brown*, supra. In *Brown*, we were concerned less with suppressing the fact of the autopsy than we were with controlling the orchestration by prosecutors of the victim's body, medical procedures, and photographic technique to produce pictures that would inflame and confuse a jury, obscuring the issue of the defendant's guilt or innocence.

Here, the pre-autopsy photos showed the fatal wounds in the victim's chest. The prosecutor, in addition, muted the gruesome effect of the photographs through the use of black and white film and the manipulation of the camera angle. As the pictures in question showed a material fact and the state used the photographer's skill to reduce, rather than increase the inflammatory effect of the sight of the victim's body, we find these photographs admissible under *Brown*, supra.

3. Appellant asserts that the trial court erred in admitting fingerprint cards into evidence without a showing of the chain of custody of the cards.

A fingerprint is far from fungible. The value of a fingerprint lies in its unique pattern. A fingerprint card, thus, may be admitted into evidence without the showing of a chain of custody since it can be

readily identified by reference to the subject's fingerprints. We find no error. *Harper v. State,* 251 Ga. 183 (304 SE2d 693) (1983).

4. Appellant charges that the trial court erred in allowing the victim's clothes into evidence. We find no error. *Evans v. State,* 70 Ga. App. 500 (28 SE2d 671) (1944).

5. Appellant, in a series of enumerations, attacks the relevance and admissibility of evidence and testimony regarding bloody footprints found on the floor of the victim's apartment and the human blood found on one of appellant's feet. The exhibits and testimony in question, when taken together, create a strong inference that appellant was in the victim's apartment near the time of her death. We find no lack of relevance.

6. Appellant claims that the trial court erred in allowing Lt. Tucker of the Moultrie Police to testify that his investigation did not produce any evidence of the presence of anyone except the victim, her father, and appellant at the scene of the crime on the day of its commission. Appellant charges that this testimony constituted opinion evidence.

The District Attorney asked Lt. Tucker, "Has anything in your investigation to this date revealed to you that anyone was present inside 716 5th Avenue prior to the death of Pearlie Mae Robinson except Pearlie Mae Robinson and Johnny Frank Hill?"

Lt. Tucker responded, "Mr. Sharp on the other side of the house . . . They're the onliest three people that my investigation shows there within, you know, an hour or so of the time of the death."

At some point, testimony as to what a person found or did not find becomes opinion testimony. We find this testimony more in the nature of a summary of fact than a conclusory opinion. Though this testimony is perched upon the line between fact and opinion testimony, we find no error.

7. Appellant finally enumerates as error the admission into evidence of a knife and a picture of that knife as it was found at the crime scene. He charges that this evidence was cumulative and lacked probative value.

Expert testimony established the similarity between the knife in question and the murder weapon. Under these circumstances, the admission of the knife into evidence was not error. *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979). As for the picture of the knife, pictures of a crime scene are generally admissible as evidence. *Brown v. State,* 253 Ga. 363 (320 SE2d 539) (1984).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 15, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Twitty & Slover, Jack G. Slover, Jr.,* for appellant.

*H. Lamar Cole, District Attorney, James B. Thagard, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr.,* for appellee.