## 42147. GOODMAN v. THE STATE.
(336 SE2d 757)

SMITH, Justice.

A Spalding County jury found the appellant, Stephen Goodman, guilty of the murder and armed robbery of Lewis Miller. The appellant received two consecutive life sentences. He raises eighteen enumerations of error. We affirm.[1]

The victim was a deaf mute traveling with two companions from Ohio to Florida. He approached the appellant at a Majik Market in Griffin, and he attempted to sell the appellant a card that showed how to communicate in sign language. When the appellant would not purchase the card, the victim asked him, by a written note, if he knew where he might buy some marijuana.

The appellant told the victim that he could find some marijuana for him, and the victim got into a car with the appellant and the appellant's half-brother, Ronnie Goss. After failing to find drugs at two locations, Goss, the appellant, and the victim drove to a lake allegedly to meet another person to make a drug deal.

The left rear tire on the appellant's car apparently went flat as the car approached the lake, and the appellant stopped to put on a spare. The appellant testified that the victim attacked him at that point in time. Goss testified that the appellant had earlier asked him to hit the victim over the head with a tire iron. He also stated at trial that the appellant asked the victim to loosen the lug nuts on the tire. Both Goss and the appellant testified that the appellant hit the victim in the back of the head, then in the front of the head with the tire iron. They then dragged the victim's body away from the scene of the killing.

Both Goss and the appellant testified that the other took the victim's wallet from his pants. Both also testified that they threw the tire iron in a creek after leaving the scene of the killing. Upon leaving the reservoir, Goss and the appellant picked up a friend and drove to Florida. After picking oranges for a number of days, they returned to

---

[1] The crime was committed on February 8, 1981. The Spalding County jury returned its verdict of guilty on July 17, 1981. A motion for new trial was filed on August 13, 1981. Motion for new trial was amended on January 29, 1985. The transcript of evidence was filed on July 13, 1984. The motion for new trial was denied on February 12, 1985. Notice of appeal was filed on March 11, 1985. The record was docketed in this court on March 28, 1985. It was argued before this court on June 4, 1985.

Georgia. Goss and the appellant were arrested in Canton, Georgia.

1. In his first three enumerations of error, the appellant raises the general grounds. We find the evidence produced at trial sufficient to have authorized a rational trier of fact to conclude that the appellant was guilty beyond a reasonable doubt of the murder and armed robbery of Lewis Miller. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his fourth enumeration of error, the appellant claims that the trial court erred in charging the jury on the concept of criminal negligence, since he was indicted for murder and armed robbery, which may not be based upon criminally negligent mens rea.

The trial court charged the jury on the concept of criminal negligence in defining the term "crime" on the second page of a jury charge that occupied twenty pages of the trial transcript. The court subsequently charged the jury on the elements of murder and armed robbery, the requirement of reasonable doubt, and the burden to be borne by the state. The concept of criminal negligence could not rebut the appellant's claim of self-defense, and the charge as a whole presented the law accurately, consequently the trial court's charge as to criminal negligence was harmless error. See generally *Boyd v. State*, 253 Ga. 515 (322 SE2d 256) (1984).

3. The appellant contends that the trial court erred in failing to declare a mistrial upon the prosecutor's statement, in his final argument, that the appellant had "probably done everything that there's a law against." Upon the appellant's objection, the trial court stated, "[District Attorney] English, I will instruct you, as I instructed Mr. Newton, please, contain yourself to the evidence, and reasonable deduction therefrom; and ladies and gentlemen, I state to you again that the statements of the attorneys [are] not evidence in this case." While the prosecutor's comment was certainly not a comment on the evidence that appears in the record of this case, and was not a colorable deduction therefrom, we find that the trial court did not abuse its discretion in merely correcting the prosecutor and instructing the jury rather than declaring a mistrial. *Miller v. State*, 226 Ga. 730 (177 SE2d 253) (1970).

4. The appellant attempted to introduce a pair of blood-stained blue jeans into evidence to show, apparently, that Goss participated in or carried out the crime.

Assuming that the blood-stained blue jeans were admissible, the court did not commit reversible error in excluding them in light of the evidence presented at trial that the appellant admitted hitting the victim in the head with a tire tool, that Goss helped move the body, and that the appellant had solicited Goss' help in robbing the victim.

5. The appellant contends that the trial court erred in allowing the state to introduce evidence of an independent crime that he alleg-

edly committed, because the prior crime was not similar to the crime here in question.

The state introduced evidence that the appellant had previously hit another handicapped person in the back of the head with a tire iron as the handicapped person bent over to help repair the rear left tire of the appellant's car, and that the appellant then robbed the unconscious handicapped person. We find sufficient similarity. *Brown v. State*, 250 Ga. 66, 73 (295 SE2d 727) (1982).

6. As the appellant has not shown that the testimony of a certain police officer would have raised questions as to the admissibility of the independent crime noted in Division 5, we find no reversible error in the trial court's refusal to hear the officer's testimony.

7. Appellant next charges that the trial court erred in admitting into evidence pictures of the victim's body on an autopsy table prior to and following an autopsy.

The pre-autopsy photograph shows the state of the victim's body and the location of his wounds. We find no error in its admission. See *Hill v. State*, 254 Ga. 213, 214 (326 SE2d 757) (1985). While the post-autopsy photographs might well be inadmissible under the standard established in *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983), the standard set out in *Brown* operated prospectively, and this case was tried prior to this court's decision in *Brown. Grant v. State*, 251 Ga. 434 (306 SE2d 265) (1983). We find no error.

8. The appellant asserts that the trial court erred in allowing the prosecution to question him as to various criminal activities in which he had been involved. We find no error. *Phillips v. State*, 254 Ga. 370 (329 SE2d 475) (1985).

9. The appellant asserts that the trial court should have made an in camera inspection of the police files in this case pursuant to his *Brady* motion. He also claims that the trial court should have declared a mistrial when it discovered that purportedly exculpatory evidence had actually been in the police files and not in the district attorney's files.

The trial court performed an in camera inspection of the prosecution's files. Evidence produced at trial showed that the police had possession of a knife belonging to the victim, and that they had found the knife in the area of the homicide. "There was no evidence that the [knife was] intentionally suppressed and since the evidence was available to the appellant during his trial, the rulings made in *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) do not apply." *Emmett v. State*, 232 Ga. 110, 122 (205 SE2d 231) (1974). We find no error.

10. The trial court did not err in charging the jury as to the law of conspiracy. See *Harris v. State*, 236 Ga. 242 (223 SE2d 643) (1976).

11. The appellant contends that a certain potential defense wit-

ness should have been granted immunity so that he could testify at trial.

In *Dampier v. State*, 249 Ga. 299, 301 (290 SE2d 431) (1982), this court held that "[t]he real question [in addressing this issue] is whether the state has such an interest in denying use immunity to [the witness] that this interest outweighs the defendant's need for her testimony." The appellant, here, claims that he needs Rocky Taylor to testify to show that he set up a drug deal with Taylor at the reservoir to find drugs for the victim. Proof that the appellant set up a drug deal at the reservoir prior to the killing does not corroborate his claim of self-defense or create doubt in the state's case sufficient to establish enough "need" to support a grant of immunity under *Dampier*, supra. We find no error.

12. The appellant contends that the trial court erred in allowing Goss to testify that the appellant, not Goss, took the victim's wallet out of the victim's pocket. He claims that this testimony was not from personal knowledge, thus it should not have been admissible.

Even if Goss did not see the appellant take the wallet from the victim's pocket, if Goss knew that he did not take the wallet himself and that the wallet later appeared in the trunk of the car, he would know that the appellant was the only person who could have taken the wallet. The real issue was Goss' credibility, a proper question for the jury.

13. The appellant charges that evidence acquired pursuant to a search of his car in Spalding County should have been suppressed as "fruit of the poisonous tree" because of an illegal search conducted in Cherokee County at the time of his arrest.

A Cherokee County police officer arrested the appellant and Goss, pursuant to a radio lookout, as the appellant and Goss sat in the appellant's car in a parking lot. After the appellant's car had been searched and impounded at the time of his arrest in Cherokee County, the car was towed to Spalding County where it was searched. The Spalding County police seized certain items that they found during that search.

Probable cause may rest upon the collective knowledge of the police when there is some degree of communication between them, rather than solely on the information possessed by the officer who actually makes the arrest. *Whiteley v. Warden*, 401 U. S. 560 (91 SC 1031, 28 LE2d 306) (1971). The contents of an impounded vehicle are routinely inventoried to protect the property of the owner, protect the officers against claims for lost or stolen property, and protect the police from potential danger. *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976); See also *Mooney v. State*, 243 Ga. 373, 379 (254 SE2d 337) (1979). We find no error.

14. Finally, the appellant contends that the trial court erred in

refusing to grant his motion for a change of venue.

The appellant and Goss escaped from jail and were captured the weekend before the trial began. Two Griffin radio stations reported the escape, and the Griffin newspaper ran a story which described the escape and which stated that the victim's body had been mutilated by the murderer. The appellant claims that the nature of this publicity and its proximity in time to the trial rendered the trial setting in Spalding County "inherently prejudicial."

The "media barrage" in this case does not rise to the level or tone of press coverage sufficient to create an inherently prejudicial trial setting. Compare *Rideau v. Louisiana*, 373 U. S. 723 (83 SC 1417, 10 LE2d 663) (1963); *Sheppard v. Maxwell*, 384 U. S. 333 (86 SC 1507, 16 LE2d 600) (1966). In addition, we note that the lack of record covering the voir dire proceedings in this case renders a determination of actual prejudice difficult, if not impossible. Finally, we observe that courts will generally be less likely to closely scrutinize the prejudicial effect of publicity upon a defendant's trial in cases where that publicity is created by the defendant's escape attempt than in cases where the publicity stems from other sources.

*Judgment affirmed. All the Justices concur, except Gregory and Weltner, JJ., who concur in the judgment only.*

DECIDED NOVEMBER 27, 1985.

*Carlisle & Newton, Griffin E. Howell III*, for appellant.
*Johnnie L. Caldwell, Jr., District Attorney, Paschal A. English, Jr., Christopher C. Edwards, Assistant District Attorneys, Michael J. Bowers, Attorney General, Dennis R. Dunn, Staff Assistant Attorney General*, for appellee.