A04A1246. BAKER et al. v. STATE OF GEORGIA.
(605 SE2d 126)

PHIPPS, Judge.

Bryan County sheriff's officers seized a total of $14,710 in cash from the trunk of a car and from the pocket of passenger Travis Baker. The state initiated forfeiture proceedings, alleging that the money had been involved in violations of drug laws. Baker and Andre Barbary, the driver of the car, filed a claim for the money. After a hearing, the trial court ruled that the state had shown that the property was subject to forfeiture and that the claim filed by Baker and Barbary (collectively, appellants) was legally insufficient. They appeal, challenging both rulings. Because appellants' claim was legally sufficient, we reverse and remand.

As no evidentiary hearing was held, the factual record in this case is undeveloped. Nevertheless, in its forfeiture complaint, the state alleged the following facts, which appellants do not dispute:

On June 8, 2003, officers of the Bryan County Sheriff's Office made a lawful traffic stop of a vehicle driven by Claimant Andre Barbary on Interstate 95 in Bryan County, Georgia. During the stop, officers received consent to conduct a free-air search around the vehicle with a trained drug detection dog, and the dog gave a positive alert on the vehicle at the front, passenger door. Officers subsequently searched the vehicle and found a large sum of United States currency

in the trunk, bundled and hidden in two separate bags. The passenger in the vehicle, Claimant Travis Baker, was found to have a large sum of cash in his pants pocket. Both Barbary and Baker had previously denied to the officers that they were carrying any large sums of cash or drugs. The total amount of currency located in the car and on the person of Claimant Travis Baker was $14,710.00. . . . After the seizure of the currency, a five bag test was conducted with a trained drug dog, which gave a positive alert for the presence of narcotics on the bag containing the currency.

It is undisputed that the police found no drugs in the car or on appellants and that neither man was charged with any crime.

The Bryan County district attorney ran a notice of seizure in the local newspaper that stated in part:

Pursuant to O.C.G.A. Sec. 16-13-49, any person claiming an interest in the following property is hereby notified that on June 8, 2003, said property was seized by officers of the Bryan County Sheriff's Office from Travis Baker and Andre Dion Barbary: Fourteen Thousand, Seven Hundred and Ten Dollars ($14,710.00) in United States Currency. The conduct giving rise to said seizure was as follows: On June 8, 2003, in Bryan County, Georgia, said property was used or intended for use to facilitate a violation of O.C.G.A. Sec. 16-13-49 and/or was proceeds derived or realized there from.

Appellants submitted a timely claim for the money, asserting that Baker owned approximately $6,800 of it and Barbary owned the remainder. They claimed that the money was not subject to forfeiture because it had been acquired through legitimate means, had not been found in proximity to any drugs, and had not been used or intended for use in any illegal transaction. With respect to the origin of the money, they alleged:

The bulk of the cash seized from Travis Baker was acquired by Mr. Baker through his employment at Premier Beverage, his employer, in Miramar, Florida, over the years during which he has been so employed. A portion of the money was realized by Mr. Baker through selling used cars. While not presently employed, Mr. Barbary, too, accumulated a portion of the money seized from his possession through former employment, and from selling used cars. An additional portion of the seized property may have been acquired by either or both of the parties through loans from family

members or friends, at various times in the recent past.

Appellants further alleged that they had

given information to law enforcement in support of these assertions, including information that the cash was intended for use in the purchase of an automobile in the State of South Carolina, which purchase was aborted upon the claimants' examination of the automobile in question.

The trial court found that appellants' claim failed to "fully provide dates, identity of transfers, circumstances of the claimants' acquisition of interest in the property, and that the claim fail[ed] to state all essential facts supporting these assertions as required by law." The court also found that "the State's shown that the money was used to facilitate drug trafficking." Accordingly, the court ordered the money to be forfeited to the state.

Under the drug forfeiture statute, property subject to forfeiture includes that "which is, directly or indirectly, used or intended for use in any manner to facilitate" a violation of the drug laws or "any proceeds derived or realized therefrom."[1] Property may be seized "without process" under certain circumstances, including "if there is probable cause to believe that the property is subject to forfeiture."[2]

If the estimated value of the property is $25,000 or less, the district attorney of the judicial circuit where the property was seized is authorized to initiate forfeiture proceedings by posting notice of the seizure in the local courthouse and by publishing a copy of the notice in the local newspaper for at least three successive weeks.[3] Within 30 days after the second publication, an owner or interest holder may file a claim for the property.[4]

The claim must be signed by the owner or interest holder under penalty of perjury and must set forth:
(A) The caption of the proceedings as set forth on the notice of pending forfeiture and the name of the claimant;
(B) The address at which the claimant will accept mail;
(C) The nature and extent of the claimant's interest in the property;

---

[1] OCGA § 16-13-49 (d) (2).
[2] OCGA § 16-13-49 (g) (2).
[3] OCGA § 16-13-49 (n) (1), (2).
[4] OCGA § 16-13-49 (n) (3).

(D) The date, identity of the transferor, and circumstances of the claimant's acquisition of the interest in the property;

(E) The specific provision of this Code section relied on in asserting that the property is not subject to forfeiture;

(F) All essential facts supporting each assertion; and

(G) The precise relief sought.[5]

Within 30 days of the filing of a claim, the district attorney may file an in rem forfeiture complaint.[6] The owner or interest holder may then file an answer, and the court must hold a hearing within 60 days after service of the complaint to determine whether the property should be forfeited.[7]

Under the statute, then, the owner or interest holder's first opportunity to challenge the state's seizure of property is at a hearing following the filing of a forfeiture complaint and answer. And we have held that when the state proceeds under OCGA § 16-13-49 (n), it has no obligation to file a forfeiture complaint until the owner or interest holder has filed a legally sufficient claim to the property.[8] Thus, in the absence of a legally sufficient claim, the owner or interest holder lacks standing to assert — and the trial court lacks authority to consider — the owner or interest holder's challenges to the forfeiture.[9]

A legally sufficient claim must comply with the pleading requirements of OCGA § 16-13-49 (n) (4).[10] We have held that filing a claim without sufficiently detailed information is "equivalent to filing no [claim] at all."[11] Nevertheless, we also have noted that while "the pleading requirements in a forfeiture action are strict, they are not meant to be impossible."[12] Rather, "the[ ] requirements must be interpreted reasonably"[13] in accordance with the goals of the drug forfeiture statute. Those goals may be nonpunitive, such as rendering illegal behavior nonprofitable and removing from circulation forbidden materials and contraband,[14] and in fulfilling those goals, the legislature intended "to provide for the prompt disposition of property

---

[5] OCGA § 16-13-49 (n) (4).

[6] OCGA § 16-13-49 (n) (5). Alternatively, the district attorney may file an in personam forfeiture complaint. See OCGA § 16-13-49 (p).

[7] OCGA § 16-13-49 (o) (5), (s).

[8] See *Greene v. State of Ga.*, 220 Ga. App. 292 (469 SE2d 428) (1996); *State of Ga. v. Cannon*, 214 Ga. App. 897 (449 SE2d 519) (1994).

[9] *Tuggle v. State*, 224 Ga. App. 353, 355 (1) (480 SE2d 353) (1997); *Greene*, supra.

[10] *Tuggle*, supra.

[11] Id.

[12] *Dennis v. State of Ga.*, 224 Ga. App. 11, 13 (2) (479 SE2d 380) (1996).

[13] *Harris v. State of Ga.*, 222 Ga. App. 267, 268 (474 SE2d 201) (1996).

[14] *Serchion v. State of Ga.*, 230 Ga. App. 336, 338 (2) (496 SE2d 333) (1998).

subject to forfeiture and protect the interests of innocent property owners."[15] We will not interpret the requirements of OCGA § 16-13-49 (n) (4) so strictly as to needlessly thwart a claimant's effort to obtain a hearing on whether the state may deprive him of his property.

We find that appellants' claim was legally sufficient. It explained in detail the basis for their claim to the property — that no criminal acts had occurred that would support forfeiture and that the money was not found in proximity to any drugs. In addition, it contained the information required by subsections (A) through (G) of OCGA § 16-13-49 (n) (4). The trial court found that appellants failed to provide sufficient detail for subsections (D) ("[t]he date, identity of the transferor, and circumstances of the claimant's acquisition of the interest in the property") and (F) ("[a]ll essential facts supporting each assertion"). Appellants, however, explained that they had acquired the money through their employers, through selling used cars, and possibly through loans from friends or family members. Baker's employer was listed by name; Barbary is presently unemployed. Appellants also explained that they had previously provided information to law enforcement officers supporting their assertions.

Appellants' failure to provide more detailed information about the source of the property is not fatal under the particular circumstances of this case. First, the seized property was currency, which is highly fungible. It may be difficult for a claimant to trace specific bills to a specific source or transaction, particularly where — as is alleged here — the claimants have multiple sources of money. In this regard, currency is unlike a vehicle or other personal property that is not fungible and that may be traced more easily to a particular source or transaction.[16]

Second, the district attorney's notice of seizure said only that the money "was used or intended for use to facilitate a violation of O.C.G.A. Sec. 16-13-49 and/or was proceeds derived or realized there from."[17] This conclusory language asserts no facts justifying the seizure and does not appear to comply with OCGA § 16-13-49 (n) (1), which requires the notice to include a description of "the conduct giving rise to forfeiture." To require appellants to respond to such a

---

[15] *State of Ga. v. Alford*, 264 Ga. 243, 245 (2) (b) (444 SE2d 76) (1994); see also *Serchion*, supra.

[16] Compare *Serchion*, supra at 337-338 (claimant's assertion that he acquired seized van in "approximately October 1995" from "a car lot on Thornton Road" lacked sufficient details to comply with OCGA § 16-13-49 (n) (4) (D)).

[17] Compare *Dearing v. State of Ga.*, 243 Ga. App. 198 (532 SE2d 751) (2000) (notice stated that property had been seized pursuant to the execution of a search warrant and that it had been found in close proximity to methamphetamine and cocaine).

generalized, uninformative notice of seizure with highly detailed information about precisely where, when, and how they acquired the money would be unfair. As we have recognized, "this is merely the pleading stage."[18] Appellants "do[ ] not have to prove [their] case in [their] claim."[19]

Third, it is undisputed that no drugs were found and no criminal charges filed. Thus, any link between the money and suspected illegal drug activity may be attenuated and difficult to prove.[20] The hearing, therefore, likely will focus not on whether appellants can prove that the money has a legitimate source, but on whether the state can prove that any drug activity was involved.[21] Under these circumstances, we do not interpret OCGA § 16-13-49 (n) (4) (D) to require appellants to provide scrupulously detailed information at the pleading stage about the source of the money. The information they gave was sufficient.

For these reasons, the judgment of forfeiture is reversed and the case remanded for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. Smith, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 24, 2004.

*Edenfield, Cox, Bruce & Classens, Michael J. Classens*, for appellants.

*Tom Durden, District Attorney, Donna R. Sims, Clara E. Bucci, Assistant District Attorneys*, for appellee.

---

[18] *Williams v. State of Ga.*, 222 Ga. App. 270, 272 (474 SE2d 98) (1996).

[19] *Howard v. State of Ga.*, 223 Ga. App. 323, 325 (477 SE2d 605) (1996).

[20] Although it is not our task to evaluate the evidence in this case, we note that many courts have concluded that a positive canine alert for narcotics on currency does not necessarily suggest that the money was involved in a drug transaction, as much of the currency in circulation contains narcotics residue that a trained dog can detect. See, e.g., *United States v. $5,000 in U. S. Currency*, 40 F3d 846, 849 (6th Cir. 1994); *United States v. U. S. Currency, $30,060*, 39 F3d 1039 (9th Cir. 1994); *United States v. $639,558 in U. S. Currency*, 955 F2d 712, 714, n. 2 (D.C. Cir. 1992); *Valerio v. Lacey Police Dept.*, 39 P3d 332 (Wash. Ct. App. 2002); *State of Fla. Dept. of Highway Safety &c. v. Jones*, 780 S2d 949, 952 (Fla. App. 2001); *State of La. v. $77,014*, 607 S2d 576 (La. Ct. App. 1992).

[21] See, e.g., *State of Ga. v. Foote*, 225 Ga. App. 222, 224 (2) (483 SE2d 628) (1997) (state has burden of making prima facie case that property is subject to forfeiture).