## A09A0932. KUYKENDALL v. THE STATE.
(683 SE2d 56)

ELLINGTON, Judge.

A Towns County jury found Ethan Kuykendall guilty beyond a reasonable doubt of four counts of child molestation, OCGA § 16-6-4

(a), and one count of statutory rape, OCGA § 16-6-3 (a). He appeals from the denial of his motion for new trial, contending that the trial court erred in admitting into evidence a bed sheet over his chain of custody objection. For the following reasons, we affirm.

Viewed in favor of the jury's verdict,[1] the evidence showed that, between February 1 and March 15, 2007, Kuykendall, who was 23 years old, repeatedly had sexual intercourse with the 14-year-old victim. According to the victim, each time, Kuykendall would come to her home in the afternoon while her parents were at work and would take her into the guest bedroom in her family's basement. The victim testified that, the first time this happened, Kuykendall threatened her and forced her into the bedroom, locked the door, shoved her onto the bed, pulled down her pants, had sex with her without using a condom, and ejaculated on the bed's sheet. After that episode, Kuykendall wore a condom when he had sex with her. A friend of the victim also testified that she was in the victim's basement after school on several occasions when Kuykendall came over and took the victim into the guest bedroom. Kuykendall threatened the girls and told them not to tell anyone about what had happened. In addition to this evidence, the State showed that Kuykendall had repeatedly called the victim's cell phone, and accepted her calls, during the period of time at issue. The victim's cell phone records showed that, on some days, there were 14 phone calls between Kuykendall and the victim.

The victim's friend eventually told a relative who worked for the sheriff's department about what was occurring between Kuykendall and the victim. After speaking with the victim and her friend, and after observing a forensic interview of the victim, an investigator went to the victim's home and took the sheet, which was beige or tan-colored with a peach floral pattern, off the guest room bed. The investigator kept the sheet locked away and secure in her custody until she and another investigator attempted to use an alternative light source (ALS) to see if there were any stains on the sheet.[2] They saw fluorescing areas that they believed to be bleach spots, but did not see anything that they believed to be evidence in this case. Therefore, the investigator locked up the sheet again and called the victim's mother, who picked up the sheet and took it home in a paper bag.

At home, the victim's mother took the sheet out of the bag and spread it out so the victim could look at it. The victim then pointed

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[2] Neither investigator had any formal training or experience in using the ALS to examine possible evidence.

out to her mother the area where Kuykendall had ejaculated. The fabric was "stiff," and the mother used a marker to circle the area. A few days later, she took the bag containing the same sheet that the investigator had originally taken off the bed back to the police station. The investigator testified that it appeared to be the same sheet in the same condition with the same fluorescing bleach stains, except that it had a circle drawn on it. Although the investigator still could not see a stain that appeared to be semen, she sent the sheet to the state crime lab. A forensic biologist employed by the crime lab testified that he found semen in the outlined area, that he cut out small pieces of the fabric, and that the fabric samples tested positive for the presence of sperm. The investigator obtained a search warrant for a sample of Kuykendall's DNA, and she submitted a buccal swab from Kuykendall to the crime lab for comparison with the DNA from the semen. The forensic biologist performed DNA testing on the fabric samples, and the testing confirmed that the DNA of the semen matched Kuykendall's DNA.

At trial, Kuykendall attempted to explain why his semen was on the sheet by claiming for the first time that, at some point prior to his arrest, he and his fiancée had used the victim's family's hot tub and had changed clothes in the basement guest bedroom. According to both Kuykendall and his fiancée, she started fondling his penis while they were both naked, and he sat down on the bed and may have excreted some fluid from his penis onto the sheet.

On appeal, Kuykendall contends that the court erred in admitting the sheet that had his semen on it into evidence because the State failed to establish a legally sufficient chain of custody. Specifically, Kuykendall complains that, after the investigator seized the sheet, but before she sent the sheet to the crime lab, the victim's family had the sheet in their possession for about two weeks and altered the sheet by circling the area around the semen stain. Kuykendall argues that the State "cannot account for the security or validity of the evidence while it was out of [its] control" and, therefore, failed to rule out the possibility that someone had tampered with the evidence. Kuykendall also argues that, even if the sheet itself was not a fungible item for which the State had to show a chain of custody, the *semen* on the sheet was fungible, and the State failed to rule out the possibility of tampering.

> Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. The burden is on the State to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not [negate] every

possibility of tampering, and need only establish reasonable assurance of the identity of the evidence. When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight.

(Citations and punctuation omitted.) *Hurst v. State*, 285 Ga. 294, 296 (2) (676 SE2d 165) (2009).

In this case, Kuykendall's arguments lack merit for several reasons. First, the sheet is a nonfungible physical object that is readily identifiable. Witnesses described the sheet as being beige or tan with peach flowers on it, the State showed jurors pictures of the sheet at the time the investigator seized it from the victim's home, and the jury had the opportunity to view the sheet that was tested at the crime lab.

"In contrast to fungible evidence,[3] if a piece of tangible evidence is a distinct item that could be recognized from its features from someone who saw it before, that person's testimony identifying the item is sufficient to authenticate it." (Punctuation and footnote omitted.) *Phillips v. Williams*, 276 Ga. 691, 692 (583 SE2d 4) (2003). Because the sheet at issue is a "non-fungible physical object[ ] easily identifiable by observation, proof of [its] chain of custody was not required prior to [its] admission into evidence." (Citations omitted.) *Simmons v. State*, 282 Ga. 183, 188 (13) (646 SE2d 55) (2007) (finding that a jumpsuit, gloves, cap, checkbook, and wallet were all nonfungible items).[4]

Second, Kuykendall's argument that the *semen* on the sheet was fungible and, therefore, was subject to tampering when not in police custody must also fail. Kuykendall suggests that a semen sample, like a blood or urine sample in a test tube,[5] could easily be exchanged for a similar-looking substance. Pretermitting whether body fluids in

---

[3] See *Phillips v. Williams*, 276 Ga. 691, 692 (583 SE2d 4) (2003) (cocaine is a fungible item); *Harper v. State*, 251 Ga. 183, 185 (1) (304 SE2d 693) (1983) (a blood sample or drugs are fungible items); *Anderson v. State*, 247 Ga. 397, 399 (2) (276 SE2d 603) (1981) (marijuana is a fungible item); *Baker v. State of Ga.*, 269 Ga. App. 722, 726 (605 SE2d 126) (2004) (currency is "highly fungible" because of the difficulty of tracing it to a particular source).

[4] See also *Felton v. State*, 283 Ga. 242, 246 (2) (b) (657 SE2d 850) (2008) (finding that a red and black bandanna was not a fungible item); *Pace v. State*, 271 Ga. 829, 840-841 (26) (524 SE2d 490) (1999) (finding that sweat pants and a pillow were not fungible items); *Harper v. State*, 251 Ga. at 185 (1) (finding that a hat and jacket were not fungible items); *Ryan v. State*, 276 Ga. App. 87, 89 (2) (622 SE2d 446) (2005) (finding that a pair of jeans was not a fungible item).

[5] See, e.g., *Warner v. State*, 277 Ga. App. 421, 422-423 (1) (626 SE2d 620) (2006) (the court erred in admitting testimony about the results of blood testing for the herpes virus because there was no proof that the blood sample was, in fact, drawn from the defendant); *McElwee v. State*, 147 Ga. App. 84, 87-88 (248 SE2d 162) (1978) (the court erred in admitting testimony about the results of blood alcohol testing because there was no proof that the blood sample was, in fact, drawn from the defendant); *Unigard Ins. Co. v. Elmore*, 137 Ga. App. 665, 665-666 (2) (224 SE2d 762) (1976) (the court properly excluded the results of blood alcohol testing because

a test tube could still be considered fungible at the time of Kuyken-dall's trial in 2008, given the availability of DNA testing,[6] the semen sample in this case was not in a cup or test tube, but was dried on a specific, easily identifiable piece of fabric. There was no evidence that the victim's family substituted a matching sheet for the one origi-nally seized by the investigator while the sheet was in their posses-sion. Moreover, even if the victim's family had had the opportunity to substitute or tamper with the sheet while it was in their custody, there is *no evidence* to even suggest that they had access to a sample of Kuykendall's semen during February and March 2007 and were able to plant it onto the sheet. Any suggestion to the contrary is outrageous and patently unreasonable.

Third, the inculpatory aspect of the semen evidence in this case was not simply that there was *semen* on the sheet, but that the *DNA* of that semen matched Kuykendall's DNA. DNA, like a fingerprint,[7] is unique to a single individual[8] and, therefore, is distinguishable from other DNA samples. Thus, DNA evidence may be admitted without demonstrating a chain of custody, since it can be readily identified by reference to the defendant's DNA. See *Hill v. State*, 254 Ga. 213, 214-215 (3) (326 SE2d 757) (1985) ("A fingerprint card . . . may be admitted into evidence without the showing of a chain of custody since it can be readily identified by reference to the subject's fingerprints.") (citation omitted).

Finally, Kuykendall's counsel vigorously cross-examined the witnesses about the handling of the sheet and, during closing arguments, emphasized Kuykendall's explanation of the semen while still suggesting that someone may have tampered with the sheet.

> Whatever doubt may have arisen from the alleged mishan-dling of evidence in this specific case could have been argued to, and considered by, the jury, and the jury is charged with deciding how much weight to give evidence. Where there is only a bare speculation of tampering it is proper to admit the evidence and let whatever doubt remains go to its weight.

(Citations and punctuation omitted.) *Thomas v. State*, 288 Ga. App. 602, 606 (2) (654 SE2d 682) (2007). Therefore, it was the jury's

---

there was no proof that the blood sample was, in fact, drawn from the body of the person whose blood alcohol level was at issue).

[6] Notably, as shown below, DNA testing was performed in this case.

[7] See generally *Hill v. State*, 254 Ga. 213, 214 (3) (326 SE2d 757) (1985) ("A fingerprint is far from fungible. The value of a fingerprint lies in its unique pattern.") (citation omitted).

[8] Or, more accurately in the case of DNA, an individual and his or her identical twin.

function to weigh the evidence regarding the sheriff's department's handling of the sheet, the victim's mother's access to the sheet, and Kuykendall's explanation as to why his semen was on the sheet.[9]

Accordingly, we conclude that the court did not abuse its discretion in admitting the sheet and the fabric samples cut from the sheet over Kuykendall's chain of custody objection.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 24, 2009.

*William B. Barker*, for appellant.
*N. Stanley Gunter, District Attorney*, for appellee.

---

[9] Ironically, Kuykendall's testimony that he probably secreted some semen onto the sheet while in the bedroom with his fiancée essentially undermined his suggestion that *someone else* must have surreptitiously placed his semen on the sheet.