**FIRST DIVISION**
**BARNES, P. J.,**
**McMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2018**

# In the Court of Appeals of Georgia

A17A1444. NATIONS v. THE STATE.

REESE, Judge.

A jury found Tremayne Nations guilty beyond a reasonable doubt of one count of burglary in the second degree and one count of "smash and grab" burglary.[1] He appeals from the denial of his motion for new trial, contending that the evidence was insufficient to support his convictions, the trial court erred in admitting certain evidence, and the court erred in refusing to give a requested jury instruction. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following facts. In the early morning hours of January 20, 2014, two men committed

---

[1] See OCGA §§ 16-7-1 (c); 16-7-2 (b).

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

burglaries at two different hardware stores in Douglas County. At about 12:50 a.m., a dark-colored Dodge minivan pulled up to the fence surrounding Able Tool Rental on Fairburn Road. Two men wearing gloves and dark clothes exited the van and cut the chain securing the fence's gate with a 24-inch orange-red bolt cutter. They drove the van to the front of the store, so that the sliding door of the van was facing the store, then used the bolt cutter to shatter the glass front door of the store. Within a minute, the men entered the store, took two nail guns, jumped back in the van, and drove away.

Then, at 2:11 a.m. the same morning, two men driving what appeared to be the same van drove up to the fence of the Ace Hardware store in Lithia Springs. They cut the gate's chain with the bolt cutters and parked with the passenger-side sliding door facing the store. Within a minute, they shattered the store's glass door with the bolt cutters, loaded two generators into the van, and drove away.

Investigator Dale Kelley worked for the Douglas County Sheriff's Office and learned about the burglaries later that morning. Given the similarities between the burglaries, he believed that they had been committed by the same men. Thus, he issued a statewide "be on the lookout" ("BOLO") alert to see if there had been similar burglaries committed recently in the Atlanta area. The BOLO alert included

2

information about the crimes, as well as pictures of the van and the two suspects that Kelley retrieved from the surveillance cameras at each store.

A few days later, Kelley received a call from the Gwinnett County Police Department about a similar burglary that had occurred on January 22, 2014, two days after the Douglas County burglaries. According to Gwinnett County officers, at about 3:45 a.m., two men dressed like the Douglas County suspects had burglarized an Ace Hardware store in Loganville. The men parked a dark-colored Dodge minivan in front of the store, shattered the glass door of the store with orange-red bolt cutters, ran inside, and took ten chainsaws, at least one of which was an Echo brand chainsaw, before driving away.

Investigator Kelley was also contacted by an investigator with the City of Oakwood[3] Police Department about an early-morning burglary that occurred on January 26, 2014, six days after the Douglas County burglaries. In that case, an Oakwood patrol officer observed a dark green Dodge van parked in front of the Howard Brothers hardware store at about 1:40 a.m. The officer turned off his lights and pulled in behind the van. He saw a man dressed in dark clothing exit the van and start to go inside the store through the glass front door, which was shattered. When

---

[3] The City of Oakwood is in Hall County, close to the Gwinnett County line.

3

the officer shone his spotlight on the man, the man turned around, looked at the officer, and jumped back into the van. Moments later, another man exited the store and jumped into the van. The van sped away, and the officer activated his emergency lights and siren and followed. The van went around the hardware store building and collided with the patrol car of the officer's partner, who had driven around to the back side of the building. Although the patrol car was rendered inoperable, the van kept moving, running a red light and driving recklessly at speeds up to 105 miles per hour through the city's two-lane streets, heading toward Atlanta. The officer briefly lost sight of the van when the van's driver ran several stop signs and drove down a poorly lighted narrow road. Moments later, the officer found the van, parked and abandoned, at the end of the dead-end road. Neither suspect was found that night.

The Oakwood patrol officer could see items in the van that he believed had been stolen,[4] and he called an investigator with his department. The van was transported to a secured, locked garage, where it remained until the investigator obtained a search warrant and processed the vehicle with the assistance of a special agent from the Georgia Bureau of Investigation ("GBI"). Inside the van, they

---

[4] A subsequent investigation revealed that the burglars had taken a concrete saw, leaf blowers, and a backpack blower from the Howard Brothers hardware store.

recovered the following items: an "orangish" 24-inch bolt cutter; a screwdriver; a crowbar; a matchbox; two leaf blowers; one glove; a tag for gloves; a global positioning system ("GPS") unit; and a concrete saw. They also recovered an "Echo Quick Start Guide" for the type of chainsaw that had been stolen in the Gwinnett County burglary,[5] and a price tag to a generator that had been stolen in the burglary of the Ace Hardware in Douglas County.[6] Finally, the GBI special agent found a cigarette butt on the carpet between the passenger seat and the center console of the van. The agent took particular notice of the cigarette butt because there was no other evidence of any smoking in the van, i.e., no other butts, ashes, or cigarette odor.[7]

Officers determined that the Dodge van had been stolen from a Cobb County car repair shop at around 2:00 a.m. on January 21, 2014, the day after the Douglas

---

[5] No Echo brand chainsaw was stolen from the Howard Brothers hardware store in Oakwood.

[6] Officers lifted latent fingerprints from the price tag and gave it to the Douglas County Sheriff's Office's latent print examiner to see if she could find a match. The examiner matched the fingerprints on the tag with an employee of the Douglas County Ace Hardware store, who testified that he had created and laminated the price tag himself at the store. The evidence also showed that no generator had been stolen from the Howard Brothers hardware store in Oakwood.

[7] The owner of the van testified at trial and confirmed that neither she nor her husband smoked.

County burglaries and the day before the Gwinnett County burglary. Investigator Kelley opined that the burglars had likely used a stolen Dodge van in the Douglas County burglaries, then discarded it as quickly as possible before stealing a similar van at the Cobb County shop. He testified that Dodge vans were very easy to steal using only a standard screwdriver, and that they had large, open storage spaces and wide sliding doors that made it easier to load large items and then hide them from view. A dark-colored vehicle was also favored by perpetrators because it was less noticeable than, for example, a red one. In his experience, car thieves often became very proficient at stealing certain types of vehicles, so they tended to repeatedly steal those vehicles.

Officers also seized the links that were cut on each of the chains that secured the fences of the Douglas County stores; the links were submitted to the GBI Division of Forensic Science (the "state crime lab") for "tool mark" testing. A firearms and tool marks examiner employed by the crime lab testified that both links were cut with the same type of tool, an "opposed blade pinching or shearing tool," and that the bolt cutter found in the van was this type of tool. The examiner could not conclusively determine, however, whether the bolt cutter found in the van had been the actual tool that cut the links.

In an effort to see if either of the perpetrators had used a cell phone immediately before or after the burglaries, Investigator Kelley and the Gwinnett County investigator obtained cell tower "dump" records for towers near the Douglas County burglaries and the Gwinnett County burglary.[8] They requested records of all calls made or received from 15 minutes before the approximate time of each burglary to 15 minutes afterward. The Gwinnett County records showed that two phone numbers repeatedly appeared: (404) 468-**** (the "468 number"), and (404) 587-**** (the "587 number"). Specifically, someone made five phone calls from the 468 number around the time of the Gwinnett County burglary; two of those calls were to the 587 number. In the records from the tower near the Able Tool Rental facility in Douglas County, the 468 number showed up twice. And, in the records from the tower near the Douglas County Ace Hardware, the 468 number showed up approximately four minutes after that burglary was committed. Investigator Kelley then obtained the account information for the 468 number, but it listed an invalid address in Atlanta, and Kelley was unable to locate a person by the name of the listed

---

[8] The Oakwood Police Department did not conduct a cell tower dump.

subscriber in Atlanta.[9] Further, the account records showed that the account was activated nine days before the Douglas County burglary and was cancelled on May 9, 2014. The records for the 587 number, however, showed that the subscriber as "Gail Nations." Moreover, the 587 number was the same number the Appellant provided as his sister's cell phone number when he was booked into the Douglas County jail on July 23, 2014, and the Appellant called the 587 number 156 times during the 11 months he spent in jail.

Finally, Investigator Kelley submitted the cigarette butt to the GBI crime lab for DNA testing. Once the Appellant was arrested and taken to the Douglas County jail, Kelley secured a search warrant that authorized him to obtain a DNA sample from the Appellant. Kelley took buccal swabs of the Appellant and sent them to the GBI crime lab for DNA testing. A DNA analysis of the cigarette butt showed that it contained the DNA of a single individual, the Appellant.

In addition to this evidence, the State showed that, in 2010, the Appellant pled guilty to burglarizing a commercial facility that rented and sold power tools in Griffin, Spalding County. In that case, at about 2:30 a.m. on June 5, 2010, two men

---

[9] The evidence showed that the cell phone company did not usually verify the names or addresses of subscribers.

parked a stolen, dark-colored minivan in front of the building and smashed the glass front door. Officers arrived while the burglary was in process and arrested both suspects at the scene; one of the suspects was the Appellant. Afterward, the officers observed that the sliding door of the van was open and that there were tools inside the van. The State presented this evidence in the instant case to prove identity and to disprove mistake or accident, pursuant to OCGA § 24-4-404 (b).[10]

Ultimately, the Douglas County jury in this case found the Appellant guilty of burglary in the second degree (as a lesser-included offense of "smash and grab" burglary) in the Douglas County Ace Hardware store case, and "smash and grab"

---

[10] See OCGA § 24-4-404 (b) ("Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."). The trial court gave a limiting instruction to the jury before the State presented this evidence. The admission of this evidence is not challenged in this appeal.

burglary in the Able Tool Rental case.[11] The trial court denied his motion for new trial, and this appeal followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[12] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[13]

---

[11] See OCGA §§ 16-7-1 (c) ("A person commits the offense of burglary in the second degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant building, structure, railroad car, watercraft, or aircraft."); 16-7-2 (b) ("A person commits the offense of smash and grab burglary when he or she intentionally and without authority enters a retail establishment with the intent to commit a theft and causes damage in excess of $500.00 to such establishment without the owner's consent.").

[12] 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[13] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and footnote omitted).

The standard of *Jackson v. Virginia*,[14] is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged.[15] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant contends that the State presented insufficient circumstantial evidence to support the jury's verdict. Specifically, he argues that the evidence was insufficient to prove that he committed the Douglas County burglaries for the following reasons: there were no eyewitnesses to the burglaries; neither his fingerprints nor his DNA was found at either scene; the surveillance videos did not show the perpetrators' faces; he was not arrested at or near the scene of either burglary; the perpetrators did not implicate him in the burglaries; and he did not confess to the crimes.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[16] Moreover,

---

[14] 443 U. S. at 319 (III) (B).

[15] See *Bautista v. State*, 305 Ga. App. 210, 211 (1) (699 SE2d 392) (2010).

[16] OCGA § 24-14-6.

11

[q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.[17]

We agree with the trial court's conclusion that there was an overwhelming amount of circumstantial evidence presented in this case, including cell phone records that strongly support a finding that the Appellant was at or near the scenes of the burglaries at the time each was committed, and DNA evidence that directly implicated the Appellant in a strikingly similar burglary committed days after the Douglas County burglaries. It was for the jury, not this Court, to decide whether the totality of the evidence supported a reasonable hypothesis other than the Appellant's guilt.[18] We find no error.

2. The Appellant claims that the trial court improperly admitted into evidence the cigarette butt that was found in the van after the Oakwood burglary. He argues that the State failed to adequately prove the chain of custody. However, the Appellant

---

[17] *Wright v. State*, 302 Ga. App. 332, 333 (690 SE2d 654) (2010) (citation omitted).

[18] See id.

concedes: (a) the cigarette butt containing the DNA was not a fungible item, and (b) there was no evidence of tampering presented at trial.

(a) "In contrast to fungible evidence, if a piece of tangible evidence is a distinct item that could be recognized from its features from someone who saw it before, that person's testimony identifying the item is sufficient to authenticate it."[19] Here, the GBI agent who collected the cigarette butt from the van identified it at trial. This was sufficient authentication for it to be admissible.[20]

Further, as noted by the trial court, the inculpatory aspect of the cigarette butt was not simply that there was saliva on the butt, but that the DNA of that saliva matched the Appellant's DNA. "DNA, like a fingerprint, is unique to a single individual and, therefore, is distinguishable from other DNA samples. Thus, DNA

---

[19] *Hines v. State*, 307 Ga. App. 807, 810 (2) (706 SE2d 156) (2011) (citations and punctuation omitted).

[20] See id. at 809-810 (2) (706 SE2d 156) (2011) (At trial, a sexual assault kit was shown to have the same identification number and bar code as the state crime lab originally assigned to it, and it had the initials of the GBI analyst who worked on the case. Thus, the kit itself, as marked, was not fungible. Because a witness identified the kit at trial, the court properly admitted the evidence at trial.); *Kuykendall v. State*, 299 Ga. App. 360, 363 (683 SE2d 56) (2009) (Because the bed sheet at issue was "a non-fungible physical object easily identifiable by observation, proof of its chain of custody was not required prior to its admission into evidence.") (citation and punctuation omitted).

evidence may be admitted without demonstrating a chain of custody, since it can be readily identified by reference to the [Appellant's] DNA."[21]

Accordingly, the trial court did not abuse its discretion in admitting this evidence.

(b) Even if the State had been required to prove the chain of custody for the cigarette butt, it met this burden by presenting the testimony of each person who handled the butt from the time it was collected from the van until trial. Although the Appellant notes that Investigator Kelley did not explicitly say that he delivered the cigarette butt to the GBI crime lab, Kelley testified that he received the package containing the butt from the Oakwood investigator, removed the butt so he could photograph it, repackaged it, and prepared the paperwork for the GBI crime lab. The State also presented the testimony of the GBI analyst who received the package and tested the cigarette butt for DNA.[22] As the Appellant has conceded, there was no

[21] *Kuykendall*, 299 Ga. App. at 364 (citation and footnotes omitted).

[22] See *Maldonado v. State*, 268 Ga. App. 691, 693-694 (1) (603 SE2d 58) (2004) ("Absent affirmative evidence of tampering, a crime lab and all its branch offices and employees are considered as a single link in the chain of custody. . . . [Thus,] proof that the evidence was in the custody of the State Crime Lab established the chain of custody. The State need not establish a 'perfect' chain of custody for evidence within the crime lab itself.") (citations and punctuation omitted); *Givens v. State*, 214 Ga. App. 774, 775 (2) (449 SE2d 149) (1994) ("Since there is no

14

evidence presented that even suggested that someone tampered with the package containing the cigarette butt while it was in the State's custody.

> When the State seeks to introduce into evidence an item that is subject to the chain of custody rule, it must establish with reasonable assurance that the item seized is the same as the item being offered into evidence. Nevertheless, the State is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence. We review the trial court's decision on the adequacy of the chain-of-custody evidence under an abuse-of-discretion standard. Also, this court has recognized that where, as here, there is no affirmative evidence of tampering or substitution, a missing link in the chain of custody does not alone require exclusion of the evidence. Thus, where the testimony shows that the police placed the substance in a tamper-proof identifiable container and that the crime lab technician who tests the substance received it in the same container with no proof of tampering or substitution, the State has met its burden of showing with reasonable certainty that the substance tested was the same as that seized. . . . Whatever doubt may have arisen from the alleged mishandling of evidence in this specific case could have been argued to, and considered by, the jury, and the jury is charged with deciding how much weight to give evidence. Where there is only a bare speculation of

---

affirmative evidence of tampering, the trial court did not err in treating the Georgia Crime Lab as a single 'link' in the chain of custody for admissibility purposes. [M]ere speculative doubt as to the handling of evidence while in the possession of the Georgia Crime Lab is a matter for consideration by the jury.") (citation omitted).

15

tampering it is proper to admit the evidence and let whatever doubt remains go to its weight.[23]

Based upon the evidence presented, we conclude that the State met its burden of establishing that the cigarette butt tested by the GBI crime lab was the same cigarette butt seized from the van. Thus, the trial court properly admitted the cigarette butt, and the DNA test results obtained therefrom, into evidence.[24]

3. The Appellant contends that the trial court improperly denied his written request for a jury instruction on the reliability of eyewitness identification.

It is axiomatic that a "jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law."[25] Thus, "[i]f any portion of a requested charge is inapt, incorrect, misleading, confusing, not adequately adjusted or tailored, or not reasonably raised by the evidence, denial of the charge request is proper."[26]

---

[23] *Thomas v. State*, 288 Ga. App. 602, 605-606 (2) (654 SE2d 682) (2007) (citations and punctuation omitted).

[24] See id. at 606 (2).

[25] *Marryott v. State*, 263 Ga. App. 65, 69 (5) (587 SE2d 217) (2003) (citation and punctuation omitted).

[26] *Johnson v. State*, 293 Ga. App. 32, 39 (6) (666 SE2d 452) (2008) (citation and punctuation omitted).

As the Appellant concedes, the State did not present any eyewitness testimony purporting to identify him as the perpetrator of the Douglas County burglaries. Consequently, the trial court did not err in failing to charge the jury on the reliability of eyewitness identification.[27]

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*

---

[27] See id.; *Render v. State*, 257 Ga. App. 477, 479 (3) (571 SE2d 493) (2002) ("A trial court does not err by failing to give a jury charge where the requested charge is not adjusted to the evidence presented at trial.") (citation omitted).